Dorothy L. Welsh, Administrator de Bonis Non with the Will Annexed of Edward A. Welsh, Jr., Deceased, et al., Plaintiffs-Appellees, v. Joseph H. Pritchett, Individually and d/b/a Pritchett Funeral Home, Defendant-Appellant.

Gen. No. 10,433.

Third District.

January 14, 1963.

Gillespie, Burke & Gillespie, of Springfield (Louis F. Gillespie and George B. Gillespie, of counsel), for appellant.

Roberts & Kepner, of Springfield, for appellee.

REYNOLDS, P. J.

This is a wrongful death action arising out of a collision between an automobile driven by Edward A. Welsh, Jr. and an ambulance owned and driven by Joseph H. Pritchett, on U. S. Route 36, just east of Illiopolis, Illinois. The highway is a concrete two-lane highway, approximately twenty-two feet wide, running generally east and west. The highway at the point of collision was level and straight for approximately one-half mile in each direction. The time was about 9:00 o'clock a. m., the weather was clear and the pavement dry. Pritchett driving east had passed an automobile on the north shoulder of the highway, occupied by one Mildred Shoup. Mildred Shoup waved to Pritchett and Pritchett stopped his ambulance about one-quarter of a mile east. He then proceeded to back to the west, on the pavement and was some two or three car lengths east of the Shoup car when the collision occurred. Miss Shoup, testified that after one or two cars passed the ambulance going east, Pritchett then started eastward at a slow rate of speed and was moving when the collision occurred. She saw the backup lights on the ambulance when Pritchett was backing, but could not say as to whether they were white or red. She did not notice if any lights were on when he again moved forward.

As Pritchett was backing up to a point near the Shoup automobile, there was a procession of four or five automobiles coming from the west. In the lead was an unidentified automobile. Second in line was one driven by Richard Ligon, a salesman on his way to work in Decatur. Next, according to Ligon's testimony there was an unidentified automobile and then the one driven by Welsh. Ligon is the only one to place the extra automobile in the line. Next in line, by the testimony of Dr. Seyler, was the Welsh automo-

480

bile, and following it, the automobile of Dr. Paul Seyler, professor of biology at Marietta College, Marietta, Ohio. Ligon was alone in his automobile. With Dr. Seyler was his wife and two young daughters. The testimony of both Ligon and Seyler spaces the automobiles in line at from 150 to 200 feet apart, traveling about 60 miles per hour. When the automobiles reached a point near the ambulance on the road, they slowed, to about 45–50 miles per hour, closed interval space to about 75–100 feet and the lead car pulled to the left and went around the ambulance. The Ligon car pulled to the left and went around the ambulance. If there was a third car, one between Welsh and Ligon, it also went around. Since Ligon testified to seeing in his rear view mirror the ambulance being hit forward, but didn't see the Welsh car, if there was an intervening car between him and Welsh it would have obscured his vision, and we are inclined to believe that there was no car between Ligon and Welsh and that when he testified about the car that started around, he was testifying about the Welsh car. Dr. Seyler's testimony puts four cars in the line.

Ligon testified the ambulance was not moving when he passed it, but that the left turn signal light was flickering.

Dr. Seyler's testimony was that he saw the lead car pull to the left and pass some unseen object. He saw the second car do the same and at that time saw the ambulance on the road; at that time the ambulance was in the eastbound lane, had its white back-up lights on, and when he first saw the ambulance, the Welsh car was approximately three or four car lengths from the ambulance. He saw the stop lights of the Welsh car come on and Welsh attempt to pull to the left; the ambulance was not moving.

Mrs. Seyler testified that the cars were traveling at about 60 miles per hour prior to the collision and

481

that their car was fourth in line. She had been looking at the scenery and felt the car slowing down, looked in front and saw the Welsh car about two or three car lengths from the amublance. She saw the stop lights of the Welsh car come on, and Welsh seemed to turn but was too close. She saw the back-up lights on the ambulance after the Seyler car stopped.

The testimony of the State policeman who investigated the accident showed that the Welsh car skidded forty-six feet six inches. A motorist from Georgia came along and took motion pictures of the ambulance and the Welsh car after the accident. These pictures showed the backup lights still lit on the ambulance. A used car dealer from Illiopolis, Warren E. Rebman, came along shortly after the collision and he testified he smelled gas on the ambulance and turned it off; that the driving mechanism of the ambulance was in (drive) and he turned it to neutral. James Galloway, a professional accident photographer, took pictures of the damaged ambulance at the scene of the accident and he saw the backup lights were still on when he took the pictures. Roy Cole, a maintenance supervisor for the State of Illinois, testified he arrived shortly after the accident. He didn't see any backup or white lights, but testified the red taillights were lit on the ambulance.

Mildred Shoup testified the speed of the Welsh car at the time of impact was probably 65 miles per hour. She estimated its speed at 75 miles per hour just prior to the collision.

The jury returned a verdict for the plaintiff and against the defendant for $32,382 damages. The defendant had filed a counterclaim and the jury found against the defendant and in favor of the plaintiff on the counterclaim. Judgment on the counterclaim is not appealed.

The defendant assigns as error that the trial court erred in denying defendant's motion for directed verdict and his post-trial motion for judgment notwithstanding the verdict, and that the trial court erred in denying defendant's motion for a new trial. The theory of the defendant on the motion for a directed verdict and judgment notwithstanding the verdict is that the plaintiff failed to prove due care of her decedent. Also assigned as error was the refusal of a defendant's instruction and the giving of a plaintiff's instruction.

The question of due care on the part of the plaintiff was raised by a special interrogatory to the jury and the jury found that the plaintiff's decedent was in the exercise of ordinary care and caution immediately prior to and at the time of the occurrence.

In his contention that the plaintiff's decedent was not in the exercise of due care for his own safety at the time of the accident, defendant raises two points. One, that the plaintiff's decedent failed to keep a proper lookout for his own safety, and second, that the plaintiff's decedent was following too closely or too fast. Due care on the part of the plaintiff is an indispensable element of the plaintiff's case. However, if this court cannot say as a matter of law, that the plaintiff's decedent was guilty of contributory negligence, an issue of fact is presented and it is for the jury to decide and the court has no right to take the question away from the jury or overrule the jury's determination on the point, unless it is clearly against the weight of the evidence.

The defendant cites a number of cases where the driver, having an unobstructed view of the highway and objects on the highway, did not keep a proper lookout for his own safety. Each of them presents a clear case of contributory negligence. In each of those cases, with no obstruction to view, the driver either

failed or neglected to see that which he should or could have seen had he looked. The facts in those "lookout" cases are not analogous to the facts of this case. For that reason, they furnish no guide lines for this case.

The other contention of the defendant is that the plaintiff's decedent was following too closely or too fast. Defendant cites Kronenberger v. Coca Cola Bottling Co. of Chicago, Inc., 324 Ill App 519, 58 NE 2d 334 as a key case on this point. In that case plaintiff was driving about 10 to 15 feet behind a Buick automobile on a Chicago street, approaching a "pretty bad" intersection. Plaintiff was driving 20 to 25 miles per hour. There was a large truck of the defendant parked and the Buick swerved suddenly to the left and plaintiff could not follow because of traffic and skidded 15 feet into the truck. The truck was painted yellow with a red trim, was 9 feet high at the rear and about 7½ feet wide. Defendant's truck was parked illegally. The pavement was dry and visibility good. The court held the plaintiff guilty of negligence holding that he was driving too fast or following the Buick too closely.

The case of Ceeder v. Kowach, 17 Ill App2d 202, 149 NE2d 766, was a case involving an accident on a Chicago street. In that case, approaching a stop light, both cars traveling at a speed of 10 to 15 miles per hour, plaintiff stopped his car for a red light and defendant skidded on a wet pavement into the plaintiff's car. The court held that the defendant should have foreseen that plaintiff would have to stop for a red light; that traffic on adjoining lanes would prevent turning out of the way of plaintiff's car; that he would have to apply his brakes; that his car would probably skid on the wet pavement if the brakes were applied too suddenly; and that if he were going too fast and was not far enough behind he would collide with plaintiff's car. And the court

held defendant was driving too fast or too closely and that as a matter of law defendant was guilty of negligence.

The case of Kocour v. Mills, 23 Ill App2d 305, 162 NE2d 497, is another case where the defendant was approaching an intersection where there were traffic lights. In that case, defendant approached cars that were stopped for a red light. He realized he could not stop in time to avoid hitting the car in front of him, so he attempted to go between that car and a car in the adjoining lane. In so doing he struck the plaintiff's car. The court held that the defendant was driving his car either too fast just before the collision or was following too closely behind the automobile which was in his traffic lane when it stopped in obedience to a traffic signal.

It is difficult to fit the facts in this case to the cases cited, either on the theory that the plaintiff's decedent did not keep a proper lookout for his own safety or that he was following too closely or too fast. In the "lookout" cases cited, there was no obstruction and the driver simply failed or neglected to see that which he should or could have seen had he looked. In the Kronenberger case there was a large, clearly visible truck, illegally parked. The driver was following a Buick automobile approaching a "pretty bad" intersection. In the Ceeder v. Kowach and Kocour v. Mills cases, the driver was approaching an intersection where there were traffic lights. In each of these three cases, the driver knew or should have known, that he was approaching a point of traffic congestion and danger, and did not take the necessary steps to avoid injury. Here, on the open highway there were four cars in line, each about 150 to 200 feet apart, traveling at a legal rate of speed. Ahead of them was an ambulance, backing or stopped on the highway. The first car in line, with nothing to obstruct its view, passed successfully. The second

485

car in line, also passed successfully. But, in the meantime, the procession of four cars had shortened the intervening distances between them. The first car had slowed, causing the second, third and fourth cars to slow, and the intervening space had narrowed to 75 to 100 feet, possibly less. When the second car pulled out to go around, according to the testimony of Dr. Seyler, driver of the fourth car, he had his first glimpse of the ambulance in the highway. It may well be that the driver of the third car, Welsh, first caught sight of the ambulance at the same time. The witness Shoup testified the ambulance had backed to a point nearly opposite her car on the north shoulder, and after the first two cars passed, he was going forward very slowly. Other witnesses have him stopped. There is testimony the backup lights on the ambulance were lighted at the time of the collision and afterwards. To say the plaintiff's decedent was traveling too fast is negatived by the testimony that the four cars were about 150 to 200 feet apart, and up to the time the first car reached a point near the ambulance, each car was maintaining its position and distance. Welsh could not have been traveling 75 miles an hour as estimated by Miss Shoup, since Ligon estimated his speed at 60 miles per hour, Seyler estimated his speed at 60–65 miles per hour, and if Welsh was traveling 75 miles per hour, he would have pulled away from Seyler and run into the back of Ligon's car.

The law in Illinois is that contributory negligence on the part of a plaintiff is a matter of fact for the jury to determine, and it becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 162, 125 NE2d 57; Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 320, 146 NE2d 205. A judgment for the defendant notwithstanding the verdict

486

of the jury, is only permitted where there is no evidence to support the finding of the jury. All the evidence tendered in support of the verdict must be considered in its most favorable intendments to the verdict. Any questions of disputed evidence or fact must be resolved in the most favorable manner in favor of the verdict. Lindroth v. Walgreen Co., 407 Ill 121, 130, 94 NE2d 847; Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 320, 146 NE2d 205. A motion for a directed verdict or for judgment notwithstanding the verdict, presents a single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of this case. Rohr v. Cluver, 20 Ill App2d 548, 553, 156 NE2d 770.

In this case, there is ample evidence to raise the following questions of fact: Was Welsh suddenly brought face to face with an emergency, not his own creation? Was this emergency the result of his own negligence, or was it the something he, as a reasonable person, could not foresee? Upon being confronted with the emergency, did he act as a reasonably prudent person would act for his own safety? Was what was done by Welsh no more than might have been expected from an ordinarily prudent person, placed in like circumstances? These questions are questions of fact for the jury and on the question of contributory negligence, as raised by the defendant, using the language in the case of Osborne v. Redell, 22 Ill App2d 193, 203, 159 NE2d 841, "there is no theory, under the circumstances, under which to conclude, as a matter of law, that due care for his own safety required of the plaintiff that he do differently than he did."

We have examined the objections to the instructions and find no merit in them.

487

■ In this case, we cannot say, as a matter of law, that due care is wanting. It cannot be said here that the action of the plaintiff's decedent was clearly and palpably negligent, and hence it is not within the province of the court to substitute its judgment for that of a jury which is provided for the purpose of deciding this as well as the other questions of fact in the case.

For the reasons stated the judgment will be affirmed.

Affirmed.

CARROLL and ROETH, JJ., concur.