GEORGE D. LEONARD *et al.*, Plaintiffs-Appellants-Appellees, *v.* PACIFIC INTERMOUNTAIN EXPRESS CO. *et al.*, Defendants-Appellants.—(LESTER E. EXLINE, Defendant-Appellee.)—(SOUTHERN EXPRESS, INC., *et al.*, Plaintiffs-Appellees, *v.* LESTER E. EXLINE, Defendant-Appellee—(GEORGE D. LEONARD *et al.*, Defendants-Appellants.).—PACIFIC INTERMOUNTAIN EXPRESS CO. *et al.*, Cross-Plaintiffs-Appellants, *v.* LESTER E. EXLINE, Cross-Defendant-Appellee.)

First District (1st Division)   Nos. 59440, 59441 cons.

Opinion filed April 12, 1976.

Walter M. Ketchum, of Chicago (Michael McNulty and William J. Harte, of counsel), for appellants Pacific Intermountain Express Co. and Sanford C. Matter.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, and Daniel J. Cheely, of counsel), for appellee Lester E. Exline.

Thomson & Thompson, of Chicago, for appellants-appellees George D. Leonard and Monica Perko Garretson.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

These multiple actions, consolidated in the trial court, arose out of a highway accident involving two cars and two trucks all proceeding in the same direction. The first vehicle was a passenger car driven by Lester E. Exline. The second vehicle, another passenger car, was driven by George D. Leonard, who had two passengers, Monica Perko Garretson and George Perko. (George Perko is not a party to this litigation.) The third vehicle, a tractor with two trailers, was owned by Pacific Intermountain Express Co. (P.I.E.) and driven by Sanford C. Matter, accompanied by an alternate driver, Leo Weis. The fourth vehicle, another tractor and trailer truck, was driven by Robert Stryszyk and owned by Southern Express Co.

A plethora of complaints, cross-complaints and other pleadings was filed. There was a separate trial as to liability only. At the end of the trial, the court directed a verdict in favor of Leonard (driver of the second vehicle) and against P.I.E. and Matter (respectively owner and driver of the third vehicle) on the ground that they were negligent as a matter of law. The jury returned a general verdict in favor of Leonard and against Exline, but answered a special interrogatory finding Leonard guilty of contributory negligence. The trial court then set aside the directed verdict against P.I.E. and Matter and the jury's general verdict against Exline and

entered judgments in their favor. Leonard appealed from the judgments, contending that the answer to the special interrogatory was against the manifest weight of the evidence and that the jury was improperly instructed. P.I.E. and Matter contend that the directed verdict and judgment in favor of Leonard was error.

The jury found in favor of Monica Garretson (passenger in the Leonard car) and against Exline (driver of the first car). The court directed a verdict in favor of Monica Garretson and against P.I.E. and Matter. Judgments were entered on these verdicts. P.I.E. and Matter also claim error in the directed verdict and judgment in favor of Monica Garretson. The court also directed a verdict in favor of Exline and entered judgment for him. P.I.E. and Matter also claim this directed verdict was error. The court also directed verdicts against Southern and Stryszyk (respectively owner and driver of the fourth vehicle). This is not questioned on appeal.

The collision occurred at approximately 9:30 p.m. on Friday, July 14, 1967. Exline left his place of employment on Chicago's southwest side on Friday afternoon. He testified that he went shopping with a co-worker and then stopped for two or three beers before heading for home. At Route 45 he entered Interstate Highway 55, a six-lane, limited access expressway which runs in a southwesterly direction from Chicago. The posted minimum speed limit on I-55 is 45 miles per hour. Some time thereafter, Leonard approached from the rear and followed Exline in the far right-hand or outside lane. Shortly thereafter, at an exit-entrance area, Exline slowed well below the minimum speed or, as contended by Leonard, stopped. This forced Leonard to slow or stop. There was no traffic or other obstruction in front of Exline and, although the weather was clear and dry, he said that the reason for his slowing down was that he was looking at the road signs. Exline then sped up to about 45 or 50 miles per hour. Leonard testified he tried to pass Exline but could not because of the speed and volume of traffic in the lane to his left. About a mile from the first slowdown, Exline again slowed down or stopped shortly after passing another exit. Again, there was no apparent reason for this behavior. When Exline's car slowed, this forced Leonard also to slow and come to a stop.

Also traveling in the right lane were the P.I.E. truck and the Southern vehicle behind it. Sanford Matter, the driver of the P.I.E. truck, testified that he had just left his terminal after loading and completing a safety check on his truck and had entered the highway a few miles before the place of the accident. He said he was traveling at approximately 45 miles per hour when another truck, identified as a Carson Freight Line truck, started to pass him about two blocks before the accident scene. When the Carson truck got past the P.I.E. truck, Matter flashed his lights to signal the Carson driver that it was clear for him to come back into the right

lane. Both trucks then traveled about one-half to one block in the right lane, with Matter, admittedly, only 100 feet behind the Carson truck. Suddenly the Carson driver pulled his truck from the right lane into the center lane or into the left lane. When the Carson truck moved to the left, Matter immediately saw in the right lane an obstruction on the road, which was the stopped Exline and Leonard cars. Matter attempted to stop his truck as quickly as possible and to go around the obstruction on the left. The tractor and trailer combination started to jackknife and Matter could not get it stopped or completely into the left lane. The right front wheel of the tractor climbed over and crushed the left rear portion of the Leonard car. The tractor and the lead trailer then tipped over on their left sides, while the other trailer was left standing upright.

The Southern tractor-trailer combination, driven by Stryszyk, had been following the P.I.E. truck for approximately a mile before the accident. The first indication of trouble that Stryszyk saw was the brake lights on the P.I.E. truck come on. He immediately applied his brakes and then saw the P.I.E. truck flip over. Stryszyk steered to the right of the pileup, smashed through an exit sign and overturned. He did not strike any of the other three vehicles ahead of him.

Officer Charles Krisik of the Illinois State Police testified that he was dispatched to the scene of the accident and arrived there 5 to 10 minutes after it had occurred. He stated that after observing and talking to Exline it was his opinion that Exline was intoxicated and should not have been driving. He also issued traffic citations to the drivers of both trucks for following too closely.

A consulting traffic engineer, Willard Alroth, was called as an expert witness by P.I.E. for the purpose of testifying to the emergency stopping distance of a truck such as the P.I.E. vehicle involved here. The expert's opinion was that a truck, traveling at 45 miles per hour, with two 26-foot trailers and a gross weight of 72,000 pounds, could be stopped within a distance of 180 to 230 feet including the distance traveled from the time the driver perceives the emergency situation to the time of application of the brakes.

P.I.E. and Matter contend it was error for the trial court to direct a verdict in favor of Exline in the suit by P.I.E. and Matter against Exline. They correctly state that the standard to be followed in granting a directed verdict is set out in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The directed verdict against them could only have been granted because of the *Pedrick* principle or because they were guilty of contributory negligence as a matter of law.

The evidence clearly raised an issue of fact against Exline. He stopped or slowed his vehicle well below the minimum speed limit on an interstate highway, thus creating an obstruction which exposed the drivers behind him to an unreasonable risk of harm. His reasons for slowing or stopping did not excuse his conduct. (Ill. Rev. Stat. 1967, ch. 95½, par. 185.) His actions were a proximate cause of the damage to those following him.

However, we agree with the trial court that P.I.E. and Matter did not demonstrate their freedom from contributory negligence. Their expert witness testified that because of its weight and speed it would take, at the minimum, 180 feet to stop this truck. The Illinois statute requires trucks of this classification to maintain a distance of 300 feet from other trucks. (Ill. Rev. Stat. 1967, ch. 95½, par. 158.) Yet Matter, the driver of the P.I.E. truck, admitted he was following the Carson truck which had passed him at only a distance of 100 feet and that they had traveled approximately one-half to one block in this position before the Carson vehicle pulled out of the right lane. The testimony of P.I.E.'s alternate driver, Leo Weis, who was in the cab with Matter, was even more damaging. He testified that they followed the Carson truck with only a 30- or 40-foot distance between them. P.I.E. and Matter seek to excuse this conduct by asserting that the 300-foot distance could not be maintained because its truck had just been passed by another truck and in order to maintain the statutory distance they would have had to decrease their speed below the posted statutory minumum.

As to the passing by the Carson truck, Matter and Weis testified that Matter had blinked his lights after the Carson truck was beyond them as a signal to the Carson driver that it was safe for him to come back into the right lane in front of them and Matter testified that after the Carson truck had moved to the right lane, he followed it for one-half to one block at a distance of 100 feet before the Carson truck pulled out of the right lane. In that one-half- to one-block distance, Matter could have gradually slowed his truck to lengthen the gap without causing any serious hazard to the vehicles behind him. Although Matter and Weis testified that Matter slowed down when the Carson truck reentered their lane, this was contradicted by their testimony that the distance between them and the Carson truck when it pulled into their lane was the same as when it pulled out about a block later.

P.I.E. and Matter assert that the statute is subject to a reasonable interpretation, implying that it could not have been complied with here because they had just been passed. While all statutes must be reasonably interpreted, we see nothing unreasonable in holding that Matter had a

clear opportunity to comply with the statute. He signaled the Carson driver to reenter the lane and he did not slow down adequately within the one-half to one block.

The argument of P.I.E. and Matter that to slow down would have meant breaking the minimum speed law is untenable. The results of this accident showed that the more dangerous and less reasonable choice was to follow the Carson truck at only a 30- to 100-foot distance. The minimum posted speed limit is to prevent the very thing that Exline did. A slowly moving or stopped vehicle on a high-speed highway is a well-known danger to other drivers. While Exline was negligent, the reasonable choice for Matter was to slow below the minimum speed. The posted minimum is not to be maintained at all costs. It does not justify following too closely. A slower speed and a greater distance would have enabled Matter to stop his truck safely.

■■ P.I.E. and Matter correctly point out that the violation of the 300-foot-distance statute cannot be considered negligence per se, but only *prima facie* evidence of negligence. (*Piper v. Lamb* (1960), 27 Ill. App. 2d 99, 169 N.E.2d 164; *Burke v. Zwick* (1939), 299 Ill. App. 558, 563, 20 N.E.2d 912.) However, if it is shown that the violation of the statute was a proximate cause of the injury, then the negligence of the defendant is actionable. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79, 117 N.E.2d 74.)

> " 'What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.' " (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 101, 311 N.E.2d 128.)

The damage that P.I.E. and Matter suffered was certainly the natural and probable result of their own acts and any ordinarily prudent person should have foreseen this result.

P.I.E. and Matter cite *Moore v. Bethel* (1955), 4 Ill. App. 2d 270, 124 N.E.2d 352, in support of their argument that the question of their contributory negligence should have been submitted to the jury to resolve the factual disputes in the evidence. We fail to perceive any factual disputes in this case pertaining to P.I.E. and Matter's contributory negligence. Matter and his alternate driver, Leo Weis, were the only ones to testify to the speed at which they were driving and to the distance between themselves and the Carson truck. The only conflict in their testimony was as to the distance between the trucks; but under either version they were following the vehicle ahead too closely, both under the

law and the testimony of their own expert witness as to the minimum stopping capabilities of their truck.

The contrasting cases of *Welsh v. Pritchett* (1963), 38 Ill. App. 2d 478, 187 N.E.2d 335, and *Kronenberger v. Coca Cola Bottling Co.* (1944), 324 Ill. App. 519, 58 N.E.2d 334 (abstract opinion), are instructive. In *Welsh*, the defendant stopped his vehicle on a highway and started to back up. A line of four cars approached the defendant's vehicle from the rear. The first two cars in the line went around the defendant on the left. The third car, driven by Welsh, also tried to go around the defendant but crashed into the rear of the defendant's car. The defendant argued that Welsh was following too closely or driving too fast and was, therefore, contributorily negligent. However, the drivers preceding and following Welsh testified that there was an interval of 150 to 200 feet between the Welsh car and the preceding driver to the point where the first car in the line encountered the defendant backing down the road. The court held that under those circumstances Welsh could not be found contributorily negligent as a matter of law.

In *Kronenberger*, the plaintiff was following another car down a business street in Chicago. The defendant had double-parked his truck to deliver a cooler. When the first car encountered the double-parked truck, it went around it on the left. However, plaintiff was following the preceding car with only a 10- to 15-foot interval between them and was unable to move to the left or to stop and consequently crashed into the rear of defendant's truck. This court held that the plaintiff there was guilty of contributory negligence as a matter of law. We judge that the *Kronenberger* case is more closely related to the facts here. Matter was driving a 72,000-pound truck, with two trailers, at a speed of 45 miles per hour, only 30 to 100 feet behind another truck which blocked Matter's view of the road ahead. We judge this to be contributory negligence as a matter of law and the verdict in favor of Exline was properly directed.

*Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 288 N.E.2d 683, is applicable here:

> "A driver must use every reasonable precaution to avoid a collision with the automobile ahead. * * *
>
> A driver approaching from the rear has the duty to keep a safe lookout and must take into account the prospect of having to stop his vehicle suddenly. * * *
>
> [A] directed verdict in favor of the plaintiff * * * [was correct] because the jury's finding for the defendants on this issue would have been manifestly against the weight of the evidence." (7 Ill. App. 3d 1099, 1101-1102.)

What we have said concerning P.I.E. and Matter's contributory negligence as to Exline also applies to their relationship as to Leonard and

Garretson (respectively driver and passenger of the second car). The trial court properly directed a verdict in favor of Leonard and Garretson on the issue of liability.

However, as to Leonard the trial court set aside the directed verdict against P.I.E. and Matter and the jury's verdict against Exline and entered judgments for them because the jury affirmatively found in response to a special interrogatory that Leonard was guilty of contributory negligence which was a proximate cause of the occurrence and because this special finding was inconsistent with the verdicts and controlled them. (Ill. Rev. Stat. 1975, ch. 110, par. 65; *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 265, 226 N.E.2d 16.) Leonard argues that the jury was improperly instructed and that the jury's affirmative answer to the special interrogatory was against the manifest weight of the evidence. Exline, P.I.E. and Matter argue to the contrary.

The instruction in question read:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway.'

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent or contributorily negligent before and at the time of the occurrence."

Exline, P.I.E. and Matter argue that Leonard's failure to pass Exline after observing his erratic driving and his eventual stopping on the highway was in itself negligence under the statute referred to in the instruction.

Both Leonard and Exline cite *Barnash v. Rubovits* (1964), 46 Ill. App. 2d 409, 197 N.E.2d 134, to support their respective positions concerning the instruction. In that case, plaintiff was riding in a car driven by her husband on the Illinois Toll Road. He was traveling at 55 miles per hour when the car in front of him swerved onto the median strip, revealing a line of stopped cars in front of plaintiff's husband. He was unable to stop and consequently crashed into the stopped cars. The plaintiff sued the drivers who had stopped on the road, contending that they had violated a

rule of the Illinois Toll Road Commission which prohibited stopping on the Toll Road except in emergencies, in which case the car was to be driven onto the shoulder. The plaintiff's attorney argued that the defendants were under a duty to drive their cars onto the shoulder. This court disagreed and held that such a rule would have absurd and dangerous consequences. The court pointed out that:

> "* * * the vehicles which had pulled into the median strip with danger to themselves would sooner or later have to re-enter the stream of traffic, with hazards for them far greater than that caused by the momentary stoppage of traffic due to congestion or a disabled vehicle. The rule construed as plaintiff seeks would be unreasonable." (46 Ill. App. 2d 409, 411-412.)

The court also said:

> "A driver approaching from the rear has a duty to keep a safe lookout and use every reasonable precaution to avoid a collision with the car ahead." (46 Ill. App. 2d 409, 412.)

Exline argues that Leonard was negligent because he failed to take the reasonable step of moving onto the shoulder or of changing lanes; but this was beyond what the *Barnash* court required. Furthermore, Leonard did avoid a collision with the car ahead by bringing his car to a safe stop behind Exline. At no time was it contended that he hit Exline.

■■ More closely on point is *Mattson v. Takin Bros. Freight Lines, Inc.* (1963), 42 Ill. App. 2d 425, 429, 192 N.E.2d 406. There the defendant, who crashed into the rear of plaintiff's truck, argued that the plaintiff was contributorily negligent for stopping on the highway in violation of the same statute here involved. The evidence, however, showed that a truck preceding plaintiff had stopped on the highway and plaintiff was unable to pass due to other traffic. The court refused to rule that the plaintiff was contributorily negligent as a matter of law and stated:

> " 'The exigencies which will excuse a person from leaving a car on the public highway in violation of the statute are those which give no choice to the driver about leaving his car in that position. Instances of such exigencies are an accidental break in machinery, a failure in the mechanism or parts peculiar to the car, a sudden blocking of the highway, etc.' " 42 Ill. App. 2d 425, 429.

■■ Under the law, the instruction objected to was inapplicable to Leonard and the giving of it was error. The statute prohibited stopping on a highway only when it was practical to leave the vehicle off the highway. If we were to hold that Leonard's conduct violated this statute, then hundreds of drivers who travel Chicago's expressways would likewise be in daily violation of the law. Crowded expressways are a fact of life for motorists today and it would indeed be absurd to require them to pull off the road whenever they are forced to stop because of traffic ahead. While

Exline argues that a jury has a right to consider the violation of a statute in determining contributory negligence, that is surely not the rule where, as here, there is a complete lack of evidence that a violation occurred. Exline, P.I.E. and Matter have failed to show that it was practical for Leonard to pull off the highway. He was not negligent.

As to Garretson, Leonard's passenger, no contention is made that she was negligent. The judgments in her favor entered on the directed verdict against P.I.E. and Matter and on the jury's verdict against Exline were proper.

In response to Leonard's argument that the answer to the special interrogatory was against the manifest weight of the evidence, Exline argues that no special finding can be considered to be against the manifest weight of the evidence unless there is a failure of any evidence to support the special interrogatory, citing *Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771. We believe the more correct statement of this rule is that a special interrogatory may be set aside where it is against the manifest weight of the evidence *or* where it is not supported by any competent evidence. *Beverly Bank v. Penn Central Co.* (1974), 21 Ill. App. 3d 77, 82, 315 N.E.2d 110; *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 221, 253 N.E.2d 699; *Todd v. Borowski* (1960), 25 Ill. App. 2d 367, 375, 166 N.E.2d 296; *Paul v. Garman* (1941), 310 Ill. App. 447, 457, 34 N.E.2d 884.

■■ To prove negligence, there must be a showing of a breach of a duty and an injury proximately resulting from that breach, and the question of whether or not a duty existed is one of law to be determined by the court. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617.) Exline, P.I.E. and Matter have failed to show that Leonard was under a duty to pass Exline or to pull onto the shoulder. Their position is not unlike that of the plaintiff in *Peithman v. Beals* (1968), 103 Ill. App. 2d 138, 242 N.E.2d 476, where the court stated:

"[T]here are neither facts alleged nor authority cited which suggest that there is a violation of any duty in stopping, in a traffic holding situation, one or two car lengths behind, or distant from, a standing automobile." 103 Ill. App. 2d 138, 140-141.

A holding such as that advanced by Exline, P.I.E. and Matter which would impose a duty upon one driver to pass another would have dangerous consequences. When one driver comes up behind another who is driving erratically, the passing of that vehicle may be the most unsafe course of action. If a driver is so unstable that he, for example, stops for no apparent reason on a highway, there is nothing to assure the following driver that the car ahead will not change lanes to the left or right without warning just when he is about to be passed; and once the passing driver is in the lead, he has no defense if the reckless driver, now behind him, starts

to tailgate him or pass him recklessly. Rather than attempting to outrun the other driver, he retains, by not passing, at least some control of the situation and will be able to stop if necessary. The latter is what Leonard had a right to do.

Aside from the fact that it would have been less reasonable for Leonard to pass Exline, there was no substantial evidence that he was able to pass. Leonard testified that he could not pass Exline because of the heavy traffic on his left. He also stated that because of Exline's slowing and stopping he was not moving fast enough to be able to merge into the other lane. Although the Carson truck was able to pass Matter, driving the P.I.E. truck, that does not mean that his situation was identical to Leonard's and that Leonard could have passed Exline, as Exline contends. Stryszyk, the driver of the Southern truck, testified the traffic volume was medium at the time. Matter even testified that he didn't remember seeing the Carson truck before it passed him because "there is so much traffic out there on a Friday night, you are so busy." and that he did not pass the stopped Leonard and Exline cars like the Carson truck did because there may have been a car to his immediate left. Finally, there is the fact that if Leonard had tried to pull around Exline after Exline's second stop he would have been hit by the Carson or the P.I.E. truck if he had gone to the left, or by the Southern truck if he had gone to the right. There is no substantial evidence to support the answer to the special interrogatory.

■■ ■ Where an inconsistent special interrogatory is found to be against the manifest weight of the evidence, the appropriate relief is to order a new trial. (*Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 106, 210 N.E.2d 191; *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266, 226 N.E.2d 16.) However, where, as here, there is no substantial evidentiary support for the answer to the special interrogatory, it is proper under the rule in *Pedrick* to enter judgment on the general verdict. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504; *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 458, 308 N.E.2d 167; *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 221, 253 N.E.2d 699.) The facts here show that a finding of contributory negligence on the part of Leonard could never stand.

Accordingly, the jury's answer to the special interrogatory is set aside and the judgments against George D. Leonard are vacated. The cause is remanded to the circuit court with directions to enter judgment in favor of George D. Leonard against Pacific Intermountain Express Co. and Sanford C. Matter and also against Lester E. Exline. The judgment on the directed verdict in favor of Lester E. Exline and against Pacific Intermountain Express Co. and Sanford C. Matter is affirmed. The judgments in favor of Monica Perko Garretson against Pacific Intermountain Express Co. and Sanford C. Matter and Lester E. Exline

are affirmed. The cause is remanded to the circuit court pursuant to these directions for trial on the question of damages only.

Answer to special interrogatory set aside and certain judgments vacated; certain judgments affirmed; cause remanded with directions.

BURKE and O'CONNOR, JJ., concur.