CHARLOTTE J. SLAVIN, Plaintiff-Appellee and Cross-Appellant, v. MICHAEL B. SALTZMAN, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—93—1269

Opinion filed December 16, 1994.

T. Patrick Rice, of Greene, Jones, Brisske & Rice, of Wheaton, for appellant.

John J. Piccione and Mark W. Tader, both of Piccione, Keeley & Associates, Ltd., of Wheaton, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiff, Charlotte Slavin, brought this action for injuries sustained when she was struck by a vehicle driven by defendant, Michael Saltzman, while she was crossing the street on foot. The jury returned a general verdict in favor of plaintiff and against defendant but left blank those portions of the form pertaining to any negligence attributable to plaintiff. The jury also returned a signed special interrogatory stating that plaintiff's contributory negligence was the sole proximate cause of her injuries. The trial court conferred with the jury, completed the general verdict form, entered judgment on the general verdict, and set aside the special interrogatory. Defendant appeals, alleging that the trial court committed several evidentiary errors. Defendant also argues that the trial court abused its discretion in completing the general verdict form and entering judgment thereon. Plaintiff filed a cross-appeal requesting a new trial on the issue of damages where the jury failed to issue an award for disability and disfigurement. We reverse and remand this cause for a new trial.

The record indicates that at about 6:20 a.m. on October 19, 1989, plaintiff parked her car at her private parking space near the train

station in Naperville. Plaintiff worked in downtown Chicago and had taken the train to her job for the last 15 years. The accident occurred at the intersection of Washington Street and Fifth Avenue. Washington is a four-lane road running north-south in Naperville. Fifth Avenue is an east-west road which, coming from the west, "T's" into Washington, then jogs up north over 100 feet and continues east from Washington. The northern leg of Fifth Avenue had a traffic signal at the time of the accident but the southern leg did not. There is a pedestrian overpass to the south of the southern leg of Fifth Avenue which extends over Washington near the train station.

Plaintiff parked her car west of Washington just north of the southern leg of Fifth Avenue. She proceeded along the southern leg of Fifth Avenue walking east toward Washington. Plaintiff stopped at the southwest corner of Washington and the southern leg of Fifth Avenue and waited to cross Washington Street. The record indicates it was still relatively dark out and a light rain was falling. Plaintiff proceeded east across Washington.

Defendant was proceeding northbound in the right-hand lane on Washington to his parking space near the train station. As defendant drove under the pedestrian overpass he moved into the inner northbound lane to pass a yellow pickup truck that was stopped in the same right-hand lane about 100 feet south of the southern intersection of Fifth Avenue. Once he cleared the truck, defendant changed back to the curb lane. When his vehicle was entirely in the right lane, defendant saw plaintiff in his lane about 25 to 30 feet ahead of him. Defendant slammed on his brakes but was unable to avoid coming into contact with plaintiff. The record indicates that plaintiff was hit by defendant either in the northbound curb lane or the northbound inside lane. Plaintiff suffered a laceration on her head requiring stitches, a broken right arm, broken pelvic bone, and circulation problems in her right leg.

Plaintiff filed suit against defendant on September 26, 1991. Plaintiff alleged that she was crossing Washington in the statutory crosswalk at Fifth Avenue and that defendant negligently caused her injury by failing to yield the right-of-way to a pedestrian in a crosswalk, carelessly switching lanes, failing to reduce his speed, failing to keep a proper lookout, and failing to operate a motor vehicle in a controlled manner.

Defendant denied these allegations and filed affirmative defenses asserting plaintiff's own contributory negligence in that she (1) failed to keep a proper lookout, (2) failed to yield the right-of-way to a vehicle, (3) failed to yield the right-of-way to a vehicle where an overhead pedestrian crossing had been provided, (4) crossed Washington at a

point not designated a marked crosswalk, (5) voluntarily exposed herself to danger by crossing in traffic at a location not marked for pedestrian travel, and (6) crossed where other safe alternative routes were provided.

At trial, plaintiff testified that she stopped and looked for traffic before crossing Washington. She looked to her left and saw that the traffic light for Washington at the northern leg of Fifth Avenue was red. She did not see any oncoming cars to her right so she proceeded across Washington. Plaintiff testified that she never saw defendant's vehicle and does not remember anything about the accident. Plaintiff believed she had cleared at least the two southbound lanes before she was hit by defendant's vehicle.

Defendant testified that he was traveling northbound on Washington at about 25 miles per hour. The speed limit on Washington is 30 miles per hour. After noticing the yellow pickup truck in his lane, defendant checked for traffic, then moved into the inner lane while continuing to look ahead. He did not notice any pedestrians crossing Washington. Defendant looked into his right side mirror to make sure he had cleared the pickup truck in order to change back into the curb lane. He was still driving about 25 miles per hour. Defendant said he then saw plaintiff in his lane, slammed on his brakes, skidded, and hit her less than a second later.

James Bedell, a Naperville police officer who investigated the scene, testified that he measured the skid marks left by defendant's vehicle to determine the speed at the time defendant applied his brakes. Bedell calculated that the maximum possible speed of defendant's vehicle could have been 30.7 miles per hour and the minimum would have been 25 miles per hour.

At the end of testimony and arguments, the jury began deliberations at about 4:20 p.m. The parties had agreed to waive the polling of the jury. The jury returned at about 9:30 p.m. Their general verdict form, signed by all jurors, found in favor of plaintiff and awarded $56,000. However, the jury left blank the following two questions:

"Second: Assuming that 100% represents the total combined negligence of all persons whose negligence proximately contributed to the Plaintiff Charlotte Slavin's injuries, including Plaintiff Charlotte Slavin's and Defendant Michael Saltzman's we find that the percentage of such negligence attributable solely to Plaintiff is _____ percent.

Third: After reducing the total damages sustained by Plaintiff by the percentage of such negligence attributable solely to Plaintiff, we assess Plaintiff's recoverable damages in the sum of $_____."

The jury also answered in the affirmative as to the following special interrogatory submitted on a separate sheet of paper:

> "Was there contributory negligence on the part of Charlotte Slavin before and at the time of the occurrence which was the sole proximate cause of her injuries? Answer this question by filling in the following blank with 'yes' or 'no': yes."

The trial court entered judgment on the general verdict form in an order filed June 17, 1993. The order stated in pertinent part:

> "[T]he jury having returned VERDICT FORM B, assessing damages against the Defendant and in favor of the Plaintiff in the amount of $56,000.00, and further finding '0'% negligence attributable solely to the Plaintiff, said number being written in by the Court after asking the jury what was intended by leaving that space blank, and the foreman indicating '0'% was the jury's decision, and the Court then entering the $56,000 damage amount in the final blank;
>
> AND FURTHER, THE JURY HAVING filled out and signed the Special Interrogatory, inserting the word 'YES' in the blank provided, and by so doing rendering the General Verdict and Special Interrogatory to be inconsistent, and
>
> THIS COURT HAVING HEARD ALL EVIDENCE presented and having questioned the jury at the time it returned its verdict as stated above, and being fully advised in the premises;
>
> IT IS HEREBY ORDERED that the Special Interrogatory herein is found to be not supported by substantial evidence, and found to be contrary to the manifest weight of the evidence; therefore, the special interrogatory herein is set aside and declared to be without effect."

Defendant filed a post-trial motion claiming the trial court erred in completing the general verdict form itself, setting aside the special interrogatory, and entering judgment for plaintiff on the general verdict. Defendant alleged that only plaintiff's attorney was present when the trial court made its inquiry and only the foreman of the jury was asked any questions by the court. The trial court denied defendant's post-trial motion, noting in its order:

> "[W]here an inconsistent special interrogatory is found to be *only* against the manifest weight of the evidence, the appropriate relief is to order a new trial. However, where there is no substantial evidentiary support for the answer to the special interrogatory, it is proper under the rule in *Pedrick* to enter judgment on the general verdict. *Leonard v. Pacific Intermountain Express (1st Dist. 1976) 37 Ill. App. 3d 995, 1005.*

* * *

IN THE INSTANT CASE, the special interrogatory asked if the

Plaintiff's conduct was the *sole proximate cause* of her injuries, and was answered 'yes' by the jury. Viewing all the evidence in light most favorable to the Defendant, the evidence so overwhelmingly favors Plaintiff that this contrary special interrogatory cannot ever stand." (Emphasis in original.)

Defendant filed a timely appeal from this order. Plaintiff filed a cross-appeal requesting a new trial on the issue of damages based on the jury's failure to award an amount for disability and disfigurement.

We first address defendant's contentions regarding the trial court's evidentiary rulings. Defendant contends that the trial court erred in refusing to admit evidence relevant to the crosswalk issue, specifically, regarding plaintiff's proximity to any crosswalk when she was hit. First, defendant argues that the trial court erred in not allowing certain testimony of Fred Ranck, Naperville traffic engineer, regarding any city decisions on where to mark crosswalks, the justifications for painting crosswalks in one location over another, or why certain crosswalks were removed.

Plaintiff argues that this evidence is irrelevant. Illinois courts have adopted Rule 401 of the Federal Rules of Evidence, which defines relevance as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Fed. R. Evid. 401.) Defendant here disputes whether plaintiff was in the crosswalk when she was hit. However, Ranck's testimony would not have added anything to the jury's resolution of this issue. The determination of plaintiff's location at the time of the accident would not be aided by information indicating whether the crosswalk was marked with white lines, how the city determines which crosswalks are to be marked, or if the lines had been removed. The statutory definition of crosswalk does not require that it be marked with the white lines. (See 625 ILCS 5/1—113 (West 1992).) Apparently, defendant was trying to imply that, if the white lines had been removed from the crosswalk where plaintiff crossed Washington, it was for a reason and that plaintiff should have chosen a different route across the street. We conclude this information would be irrelevant and prejudicial to plaintiff and that the trial court properly disallowed this evidence.

Defendant also contends that the trial court erroneously denied admission of a diagram of the accident scene drawn by Officer Bedell which he included in his report. The diagram showed crosswalks, overpasses, traffic signals, and skid marks. Bedell admitted the diagram was not drawn to scale. The trial court denied admission because the diagram was not drawn to scale and was therefore inaccurate.

The admissibility of diagrams is addressed to the sound discretion of the trial court, and a decision to admit such evidence will not be disturbed unless its exercise is clearly abused. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 706.) We find nothing in the record to indicate that the trial court abused its discretion in refusing to admit the diagram into evidence when the diagram was admittedly not drawn to scale and could have confused or misled the jury.

■ Defendant next contends that the trial court erred in allowing into evidence photographs of the intersection taken in May 1990, six months after the accident on October 19, 1989. Defendant argues that these photos had no foundational basis since the photographer could not testify that they accurately depicted the accident scene at the relevant time. Alan Hracek, the investigator hired by plaintiff who took the photos, testified that he had driven by the area two or three times a month for several years before the accident. He admitted he did not and could not know if the photos accurately depicted the scene as it looked on the morning of October 19, 1989.

Plaintiff's counsel questioned Hracek as to three of the photographs, plaintiff's exhibits Nos. 1, 4, and 7, as follows:

"Q. Now, with the exception of the weather, the lighting conditions and markings on the street, that is to say the permanent things that are shown in the photograph, the streets, the curbs, the location of the buildings and that type of thing, do those photographs truly and accurately portray the scene as it appeared in October of 1989?"

Plaintiff's counsel asked similar questions as to the other photographs at issue and Hracek answered in the affirmative on all the photographs. Defense counsel objected to each of the photographs on the basis of foundation and Supreme Court Rule 220.

The trial court allowed the photos into evidence and instructed the jury as follows:

"With the qualifications made that, ladies and gentlemen of the jury, I'm sure you just heard, that was with the exception of the weather, the lighting and the markings on the highway, that these two photographs, Nos. 8 and 8A, are an accurate representation of the scene, they will be admitted for that limited purpose.

* * *

You all have to understand this is with a limited purpose; that these photographs are not represented to be accurate as to weather, lighting and markings on the highway."

The trial court later repeated this instruction a third time.

The general rule is that a photograph is admissible if it has a reasonable tendency to prove a material fact in issue. (*Smith v.*

*Baker's Feed & Grain, Inc.* (1991), 213 Ill. App. 3d 950, 952.) The admission of photographs is a matter within the sound discretion of the trial court, whose decision we will not disturb absent a showing of abuse. (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 131.) Admission requires some foundation to establish that the object depicted was in substantially the same condition as it was at the relevant time and that the photograph is a true and correct representation of what it purports to portray at the relevant time. *Prochnow v. El Paso Golf Club, Inc.* (1993), 253 Ill. App. 3d 387, 403.

We believe that insufficient foundation existed for Hracek to testify that the photographs accurately portrayed the scene in October 1989. Hracek testified that he had passed by the accident scene two or three times a month before the accident and for several months after the accident. He admitted that he was not at the accident scene on October 19, 1989, and thus he would not know the conditions of the scene at that time. Therefore, Hracek could not have known whether his photographs, taken in May 1990, accurately portrayed the accident scene as it appeared in October 1989. Accordingly, we conclude that these photographs were erroneously admitted based on this testimony.

■ Defendant contends that the trial court erred in allowing evidence of plaintiff's claimed injuries, including testimony and photographs of the swelling and skin condition on her legs occurring after May 1, 1990. Defendant argues that plaintiff offered no medical testimony linking her present condition to the accident. Defendant also argues that plaintiff suffered from swelling in her legs before the accident and that her present condition cannot be charged specifically to the accident.

The evidence deposition of Dr. Steven Nemeth was read to the jury at trial. Dr. Nemeth testified that he has seen plaintiff as a patient since December 1989 and continued to see her at the time of his deposition on September 2, 1992. Dr. Nemeth testified regarding the blood clot in plaintiff's leg that she experienced after the accident and which required her hospitalization in January 1990. He opined that this blood clot left her with an increased risk of future blood clots in her leg. Dr. Nemeth stated that plaintiff has had problems with her legs in the past but that the main cause of the acute blood clot was the immobility that was caused by the accident. However, Dr. Nemeth added "I don't think that after the accident I could really say that she was any better or any worse than what she was before. I would say she was in the same shape, regarding the blood clots in her legs, she was probably in the same shape as she was in before the accident."

Dr. Clyde Dawson's evidence deposition was also read to the jury. Dr. Dawson testified that he examined plaintiff's tests in January 1990 but he did not think he had actually ever seen plaintiff. He stated that, within a reasonable degree of certainty, the blood clot on plaintiff's right leg was caused by the accident. Dr. Dawson noted that blood clots can form at any time as a result of the old effects of an injury and being immobilized. Dr. Dawson opined that plaintiff would more than likely have another blood clot in the same leg sometime in the future. He believed that plaintiff could have chronic swelling in the leg for the rest of her life. Dr. Dawson also noted that plaintiff could develop injury to the skin and the fat and tissues underneath the skin in the ankle area which can lead to dermatitis and ulceration of the skin. We conclude that this medical testimony was sufficient to link plaintiff's condition after May 1990 to the accident and the admission of this evidence was not error.

We now address defendant's contention that the trial court abused its discretion in completing the jury's general verdict form, failing to enter judgment on the special interrogatory, and entering judgment on an inconsistent general verdict. Section 2—1108 of the Code of Civil Procedure pertains to special interrogatories and provides:

"Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. *** When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." 735 ILCS 5/2—1108 (West 1992).

Although neither party addressed this issue on appeal, we first consider whether the special interrogatory was in proper form. The purpose of a special interrogatory is to act as a check upon the deliberations of the jury as to an ultimate question of fact. (*LaPook v. City of Chicago* (1991), 211 Ill. App. 3d 856, 865.) If the special interrogatory is inconsistent with the general verdict and is not against the manifest weight of the evidence, then judgment should be entered based on the special interrogatory rather than on the general verdict. *State Farm Fire & Casualty Co. v. Miller Electric Co.* (1990), 204 Ill. App. 3d 52, 60.

We note that a special interrogatory should use the same terms as those set forth in the court's instructions to the jury. (*Santos v.*

*Chicago Transit Authority* (1990), 198 Ill. App. 3d 866, 870.) In *Lundquist v. Nickels* (1992), 238 Ill. App. 3d 410, 434, the Appellate Court, First District, affirmed the trial court's refusal to submit to the jury a special interrogatory which asked, "Was the plaintiff Margaret Lundquist's negligence the sole proximate cause of her injuries?" The court concluded that the defendant's special interrogatory failed to refer to the plaintiff's comparative negligence and thus was not consistent with the trial court's instructions to the jury regarding the definition and scope of a plaintiff's comparative negligence. (*Lundquist*, 238 Ill. App. 3d at 434.) The court in *Lundquist* also concluded that this special interrogatory was misleading because, as phrased, the question did not ask the jury whether it had found that plaintiff was comparatively negligent, but rather *assumed* that the jury had found the plaintiff comparatively negligent. *Lundquist*, 238 Ill. App. 3d at 434-35.

We believe the special interrogatory here was more like that in *Santos*, which asked "[w]as there contributory negligence on the part of the plaintiff before and at the time of the occurrence which was the sole proximate cause of his injuries?" (*Santos*, 198 Ill. App. 3d at 868.) The court there found that this interrogatory was neither confusing nor misleading and was properly couched in the same terms as the instructions. (*Santos*, 198 Ill. App. 3d at 870.) Similarly, we conclude that the special interrogatory here was proper since it did not assume that plaintiff was negligent and it used the same terms as those found in the trial court's instructions to the jury on contributory negligence.

■ We now address defendant's contention that the trial court improperly entered judgment on the general verdict. The trial court relied on *Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, concluding that the special interrogatory here was not controlling over the general verdict. In *Leonard*, the reviewing court concluded that "[w]here an inconsistent special interrogatory is found to be against the manifest weight of the evidence, the appropriate relief is to order a new trial. [Citations.] However, where, as here, there is no substantial evidentiary support for the answer to the special interrogatory, it is proper under the rule in *Pedrick* to enter judgment on the general verdict." (*Leonard*, 37 Ill. App. 3d at 1005; accord *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, 142; contra *Starbuck v. Chicago, Rock Island & Pacific R.R. Co.* (1977), 47 Ill. App. 3d 460.

However, we need not decide this issue since we agree with defendant's contention that the trial court abused its discretion in questioning the jury foreman after the verdict was submitted and

using this information to fill in the blanks on the general verdict form, all of which was conducted outside the presence of defense counsel. It has been held that, upon receiving a verdict in irregular form, it is proper for the court to consider the entire record and to endeavor to determine the intent of the jury. (*Lockett v. Board of Education for School District No. 189* (1990), 198 Ill. App. 3d 252, 257; *Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 940-41 (a trial court may amend a verdict to conform to the intent of the jury).) However, a trial court should not amend a verdict in order to obtain a determination that the court believes the jury ought to have made. *Anderson*, 91 Ill. App. 3d at 941.

While such case law confirms that a trial court's inquiry of the jury may be appropriate in some circumstances, we do not believe the cases on this issue contemplated a situation where, as here, the trial court's inquiry is made without the presence of defense counsel. We emphasize that the trial court apparently knew of defense counsel's whereabouts and could have easily reached him but neglected to do so. The situation was especially prejudicial to defendant since the jury's affirmative answer on the special interrogatory would have precluded defendant from liability. Defense counsel should have had the opportunity to be present in order to move to instruct the jury, provide suggestions as to the trial judge's inquiry, or move for a court reporter. The trial court here committed reversible error in conducting such *ex parte* communications outside the presence of defense counsel. (*Takecare v. Loeser* (1969), 113 Ill. App. 2d 149.) While *Takecare* is factually inapposite to the case before us, it is helpful in analyzing the issues raised by the series of events which took place after the jury had reached a verdict in this case.

■ We now address plaintiff's cross-appeal which prays that this court vacate the general damages verdict and set this matter for a new trial on the damages issue since the jury failed to award plaintiff an amount for disability and disfigurement. After closing arguments and instructions, the jury returned a verdict in favor of plaintiff for $56,000 itemized as follows:

| | |
|---|---|
| 1. disability and disfigurement | $ 0 |
| 2. past and future pain and suffering | $ 9,342.03 |
| 3. medical treatment received | $27,452.12 |
| 4. earnings lost | $19,205.85 |
| Total | $56,000.00 |

A jury's finding on damages should not be disturbed unless the damages are manifestly inadequate, a proven element of damages is ignored, or the amount awarded bears no reasonable relationship to

the loss suffered. (*Zitzmann v. Miller* (1990), 194 Ill. App. 3d 477, 482.) Previous cases have concluded that it was inconsistent that the jury would allow recovery for pain and suffering but fail to award any money for disability. (See *e.g.*, *Martin v. Cain* (1991), 219 Ill. App. 3d 110, 115.) Similarly, we conclude that the verdict in the instant case is inconsistent in that the jury found that plaintiff was injured and that this injury resulted in pain, medical costs, and lost wages, but that the injury did not cause disability and disfigurement.

In defining "disability," some recent decisions have likened this category of damages to "loss of a normal life." (*Smith v. City of Evanston* (1994), 260 Ill. App. 3d 925, 938; see also *Fetzer v. Wood* (1991), 211 Ill. App. 3d 70, 82.) This court recently concluded that " 'disability,' as used in Illinois Pattern Jury Instructions, Civil, No. 30.04 (3d ed. 19[92]), encompasses disability in all of its various aspects and may not be limited solely to a permanent disability where the evidence demonstrates additional or other kinds of disability." *Sands v. Glass* (1994), 267 Ill. App. 3d 45, 50.

In the instant case, as in *Sands*, plaintiff presented uncontradicted evidence that her lifestyle changed after she was injured. Plaintiff's right arm was encased in a cast from her shoulder to her knuckle for several weeks after the accident. She was hospitalized for three weeks after the collision and was unable to walk without a wheelchair or walker for nearly three months thereafter. Plaintiff's right leg swelled considerably after the accident and she later developed the blood clot which required her hospitalization in January 1990. Both Dr. Nemeth and Dr. Dawson opined that this blood clot was caused by the accident and that plaintiff would be susceptible to further clots in the future.

Although plaintiff testified at trial that she had returned to both of her previous jobs, she still experienced pain and swelling in her legs if she stood for a period of time and she could not move as quickly as she could before the accident. Plaintiff also said she has diminished strength in her right arm. Her continued pain and loss of strength has caused her to curtail her home and social activities. We conclude that such evidence was sufficient to establish the element of disability and that the jury's disregard of these damages resulted in an inconsistent verdict.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand this cause for a new trial on all issues.

Reversed and remanded.

BOWMAN and DOYLE, JJ., concur.