CINDY SANDS, Plaintiff-Appellee, v. BRUCE D. GLASS, as Special Adm'r and Ex'r for the Estate of Anatoliy Popow, Deceased, Defendant-Appellant.

Second District   No. 2—93—0410

Opinion filed September 29, 1994.

Robert S. Phillips, of Phillips & Mueller, of Crystal Lake, for appellant.

Keith L. Young, of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Following a trial on an admitted liability personal injury automobile accident case, the jury returned a verdict for damages in favor of plaintiff, Cindy Sands, but specifically awarded plaintiff nothing for disability. Defendant, Bruce D. Glass, in his capacity as administrator of the estate of Anatoliy Popow, appeals from a subsequent order of the circuit court of McHenry County which granted plaintiff's motion for a new trial. Defendant petitioned for and was granted leave to appeal pursuant to Supreme Court Rule 306(a)(1) (134 Ill. 2d R. 306(a)(1)).

The following facts were revealed at trial. Plaintiff was injured on May 11, 1989, when the car in which she was riding was struck from behind by Anatoliy Popow. When Dr. Rochell first saw plaintiff, on May 30, 1989, her arm was in a sling. The doctor treated her for a fracture of the right upper arm and prescribed continued use of the sling. In June, while he prescribed exercises for her arm to regain lost motion, he also found continued use of the sling to be appropriate. In mid-July 1989, plaintiff had decreased motion and numbness in her shoulder. She also had pain in both knees from hitting the dashboard during the accident, and the doctor diagnosed post-traumatic chondromalacia of the patella. He instructed plaintiff to avoid deep knee bends and stairs, and prescribed physical therapy for her shoulder.

In July 1990, Dr. Rochell performed surgery on plaintiff's shoulder for an accident-related injury. Over the next few months the doctor prescribed physical therapy for both her shoulder and her knee, but in November plaintiff still had pain and limitation of motion in the shoulder, and pain in the knee. The doctor prescribed home exercise and told plaintiff to avoid certain activities. Dr. Rochell opined that, although she was not totally disabled, plaintiff was disabled from doing most types of work from the date of the accident to November 1990 and might require further surgery. At the time of trial, in March 1993, plaintiff had less range of motion in her shoulder than in November 1990.

Dr. Carleton Smith, a chiropractor, first diagnosed plaintiff as suffering from a condition of the cervical and thoracic spine, in which her vertebrae were out of alignment and the muscles were inflamed. He treated plaintiff on a regular basis from two weeks after the accident in 1989 through April 1992. The doctor opined that plaintiff's injuries were permanent and were sufficient to cause some degree of disability relative to her neck and back. He had recommended to plaintiff that she refrain from lifting and heavy physical work and that she stay off work.

Plaintiff testified that, at the time of the accident, she was employed as a factory worker. Afterwards, she never attempted to return to her factory job and was terminated in March 1990. She first became employed after the accident in September 1990 when she was hired as a bus aid by the Community Action Agency for McHenry County. About a year later she became a bus driver, a job she held at the time of trial.

Both plaintiff and her friend, Amanda Nutter, testified that in the weeks after the accident plaintiff was unable to hold her two-year-old daughter or pick her up. Sometimes she could not even let

the little girl sit on her lap because of the pain. During that period, plaintiff needed help from her son and her sister in caring for her daughter. According to plaintiff, she was also unable to tend adequately to her daughter for four to six weeks after the surgery on her shoulder. Nutter added that, initially, plaintiff could not do routine housecleaning chores, like washing dishes and sweeping the floor, by herself.

Plaintiff also testified regarding her physical condition at the time of trial. Because of pain in her knees, stair climbing was a "killer," and she could not walk as much or as fast as she could before the injury. For example, she could no longer walk the family dogs. Nor could she swim as she had been able to previously. She could not sit with her leg in one position for very long as her knee would stiffen, and it would have to be rubbed to loosen it. Plaintiff said she always had pain in her neck and back, which was worse some days than others. After driving the bus her right arm and shoulder were extremely uncomfortable.

Dr. Fischer testified on behalf of defendant. With regard to plaintiff's disability he said that plaintiff was 5 feet 4 inches tall and weighed 260 pounds and that her weight could be a factor with respect to problems she may have had with her knees. The witness opined that when he examined her in April 1992 plaintiff did not have any disability with respect to her neck or back. She had some sensitivity to touch in her knees, but the witness thought that would clear up, and he did not anticipate that there would be any significant degree of disability thereafter. As for plaintiff's right shoulder, although the doctor thought she had made an excellent recovery at the time he examined her, he did find that plaintiff had a slightly limited range of motion in that shoulder. Nevertheless, she was capable of doing all the things that were necessary in her lifestyle, and, barring anything unforeseen, that should continue.

At the conclusion of the trial, the jury was given the following instruction, which was tendered as defendant's instruction No. 13:

> "If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant, taking into consideration the nature, extent and duration of the injury." Illinois Pattern Jury Instructions, Civil, No. 30.01 (3d ed. 1989).

> "The disability resulting from the injury." Illinois Pattern Jury Instructions, Civil, No. 30.04 (3d ed. 1989).

> "The pain and suffering experienced and reasonably certain to

be experienced in the future as a result of the injuries." Illinois Pattern Jury Instructions, Civil, No. 30.05 (3d ed. 1989).

"The reasonable expense of necessary medical care, treatment, and services rendered and the present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future." Illinois Pattern Jury Instructions, Civil, No. 30.06 (3d ed. 1989).

"The value of earnings lost." Illinois Pattern Jury Instructions, Civil, No. 30.07 (3d ed. 1989).

"[Whether] any of these elements of damages has been proved by the evidence is for you to determine." Illinois Pattern Jury Instructions, Civil, No. 30.01 (3d ed. 1989).

The jury returned a verdict for plaintiff in the total amount of $47,867.83. The language of the verdict form tracked the language of defendant's instruction No. 13 and itemized damages as follows:

| | |
|---|---|
| "The reasonable expense of necessary medical care, treatment and services received: | $13,413.83 |
| The present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future: | $ 2,850.00 |
| The disability resulting from the injury: | $   -0- |
| The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries: | $25,000.00 |
| The value of earnings lost: | $ 6,604.00 |
| TOTAL: | $47,867.83." |

Plaintiff filed a post-trial motion seeking a new trial on the ground that the jury's failure to award anything for disability was inconsistent with the remainder of the verdict. The motion was granted, and, despite a subsequent rehearing, the court declined to vacate its ruling. Rather, the court found that, in failing to award anything for disability, the jury had ignored a proven element of damages. This appeal followed.

Defendant asserts the trial court erred in granting a new trial. The determination of whether a new trial should be granted rests within the sound discretion of the trial court, whose ruling will not be reversed unless it reflects an abuse of that discretion. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 455; *Martin v. Cain* (1991), 219 Ill. App. 3d 110, 114.) If, in the exercise of its discretion, the trial court finds that the verdict is against the manifest weight of the evidence, it should grant a new trial. (*Maple*, 151 Ill. 2d at 456.) A jury verdict on damages may be overturned when a proven element of damages is

ignored. (*Martin*, 219 Ill. App. 3d at 114-15.) In light of these principles, we believe plaintiff was entitled to a new trial.

■ Defendant contends essentially that the phrase "[d]isability resulting" from the injury, as found in instruction No. 13, could have been construed by the jury to mean only a permanent disability. Therefore, the jury could have concluded it was to award damages for disability only if it found that any disability suffered by plaintiff was permanent in nature. Absent sufficient evidence of permanent disability, according to defendant, the jury was correct in refusing to award anything for the disability element of damages. This argument is not persuasive.

We have no quarrel with defendant's proposition that the meaning of an instruction should be gleaned in light of how and in what sense ordinary men acting as jurors, considering the evidence and circumstances presented to them at trial, will understand the instruction. (See *Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 439.) We do not, however, agree with defendant's conclusion regarding the ordinary juror's understanding of the instruction involved here.

Citing various dictionary definitions, defendant posits that the word "disability" can easily be interpreted to mean a condition that is permanent and lasting. However, all except one of defendant's definitions basically define the word as a condition of being disabled or incapacitated. "[D]isabled," in turn, is also defined as "incapacitated." (Webster's Third New International Dictionary 642 (1986).) The definition of "disability" as an incapacitated condition does not suggest that such a condition must be permanent in order to be considered a disability. On the contrary, without some language defining or limiting the word otherwise, we think the ordinary juror would view the disability language of the instruction as referring to *any* inability to function fully, regardless of the extent or duration of the inability. We find this to be particularly true in the circumstances of this case where the jury heard significant evidence that the injuries she sustained restricted plaintiff's ability to engage in usual activities on a temporary and, perhaps, a permanent basis.

Defendant's reliance on the further word "resulting" to mean something that is "current and continuing" is unfounded. All of the dictionary definitions cited by defendant relate a "result" to a "consequence," "effect," "outcome," "terminating," or "end." In this case, of course, what is at issue is the consequence or outcome of plaintiff's injury. The fact that the disability "resulted" from the injury has nothing to do with the duration of the disability. A temporary incapacity may result from an injury just as well as a permanent

incapacity. Defendant's argument fails for lack of a sound and reasonable foundation. We conclude that "disability," as used in Illinois Pattern Jury Instructions, Civil, No. 30.04 (3d ed. 1989), encompasses disability in all of its various aspects and may not be limited solely to a permanent disability where the evidence demonstrates additional or other kinds of disability.

The conclusion we reach finds support in *Martin v. Cain* (1991), 219 Ill. App. 3d 110, a case with facts strikingly similar to the facts in this case. In *Martin* the jury awarded all of plaintiff's medical expenses plus a substantial sum for pain and suffering, but did not award anything for disability and disfigurement. The evidence was uncontradicted that plaintiff's lifestyle had been changed as a result of her injury. Before the injury, plaintiff jogged, lifted weights, mowed the family lawn, did all the household chores without help, and could work as a beauty operator at her mother's shop. Afterwards, plaintiff's activities had to be curtailed, she could no longer work as a beauty operator, and she could no longer participate in sports or complete her housework without irritating her injured knee. The court found that damages were clearly evident and that the jury, therefore, had improperly disregarded proven elements of damages. Plaintiff was granted a new trial. A similar conclusion was reached in *Kumorek v. Moyers* (1990), 203 Ill. App. 3d 908, where the jury awarded compensation for plaintiffs' medical bills but nothing for pain, suffering, and disability. The court concluded that, since it was faced with zero dollar awards even though damages were clearly evident, it had no choice but to declare the verdicts to be inconsistent and grant a new trial.

In this case, as in *Martin*, there was uncontradicted evidence that plaintiff's lifestyle changed after she was injured. Initially, her arm was in a sling and, thereafter, plaintiff never regained full range of motion in the arm. Even defendant's expert acknowledged this. It was undisputed that for some time after the accident, as well as after shoulder surgery, plaintiff had not been able to pick up or hold her little daughter on her lap and had needed help in caring for the child. She also had needed help with her housework. Plaintiff testified that, at the time of trial, she could not walk or swim as she had before the accident, and she could not even sit in one position for long or her knee would stiffen. She complained of constant pain in her neck and back and extreme discomfort in her right arm and shoulder from driving the bus. Plaintiff was not specifically impeached on any of these points.

The testimony of Dr. Rochell on the issue of temporary disability went unchallenged also. The doctor opined that plaintiff was disabled

from doing most types of work from the time of the accident until May 1990, after her shoulder surgery. Defendant's expert, Dr. Fischer, on the other hand, did not even examine plaintiff until April 1992. His testimony focused on her condition at that time.

While there was evidence that plaintiff had been successfully working at the physically demanding job of a bus driver, as well as conflicting testimony as to whether plaintiff was permanently disabled, the evidence recited above was never effectively contradicted by defendant. Under *Martin* such evidence was sufficient to establish the element of disability as set forth in the instruction given to the jury. The jury's disregard of plaintiff's proven damages, in the form of disability, justified the trial court's decision to grant plaintiff a new trial.

Based on the reasoning set forth above, the order of the circuit court of McHenry County granting plaintiff's motion for a new trial is affirmed.

Affirmed.

INGLIS, P.J., and QUETSCH, J., concur.