ED WHITE et al., Plaintiffs-Appellants, v. CHARLES J. LUETH III et al.,
d/b/a Chuck's Appliances, et al., Defendants-Appellees.

Third District   No. 3—96—0073

Opinion filed September 16, 1996.

Jack L. Brooks and Jeffrey D. Bert (argued), both of Anderson & Nelson,
of Rock Island, for appellants.

Craig Levien and Jean Dickson Feeney (argued), both of Betty, Neuman
& McMahon, of Davenport, Iowa, for appellees.

JUSTICE MICHELA delivered the opinion of the court:

Plaintiffs-appellants, Ed White and Linda White, individually
and as parents and next friends of Adam White, a minor (plaintiffs),
brought a negligence action against defendants-appellees, Charles J.

Lueth III and Nola M. Lueth, d/b/a Chuck's Appliances, and Geifman Food Stores, Inc., to recover damages for injuries sustained to Adam White (Adam) when a truck driven by Charles J. Lueth III (Lueth) collided with Adam while he was riding his bicycle. The jury awarded plaintiffs $70,000 for medical expenses and pain and suffering, but awarded zero dollars for disability and disfigurement. The jury further found Adam 25% contributorily negligent and reduced the damages accordingly. Plaintiffs' post-trial motion for a new trial was denied. Plaintiffs now appeal, arguing the jury's assessment of damages was irreconcilably inconsistent and the jury's finding of contributory negligence was contrary to law and against the manifest weight of the evidence. For the reasons that follow, we disagree and affirm.

On June 10, 1992, Adam and his friend, Jeramy Sanders, were travelling by bicycle on a sidewalk in front of Chuck's Appliances in the Ridgewood Shopping Center in Moline. At the same time, a truck driven by Lueth was traversing a vacant lot that was adjacent to Chuck's Appliances. Lueth, an employee of Chuck's Appliances and son to owner Nola M. Lueth, was approaching the sidewalk in front of Adam's path. Lueth testified he crossed the sidewalk at a speed of five to eight miles per hour without stopping or slowing to check for pedestrian traffic. As the truck crossed the sidewalk, Adam's bicycle collided with the driver's side door. Due to the obstruction of Chuck's Appliances, neither Lueth nor Adam could see the other approaching the eventual point of impact.

Lueth testified his truck was already on the sidewalk before he saw Adam approaching. He further testified he saw Adam's head turned to the right, at "about three o'clock," as Adam approached the truck. Lueth stated that Adam's head turned towards the truck just prior to impact. Lueth also stated that Adam was approximately 13 feet from the truck when his bicycle first came into view. Jeramy Sanders testified that he and Adam were travelling at approximately 5 to 10 miles per hour when Adam's bicycle collided with the truck. Jeramy further stated that Adam was looking straight ahead prior to the collision. Adam also testified he was looking straight ahead prior to the collision. He did not recall seeing the truck at all, nor does he remember the impact.

The collision knocked four teeth from Adam's mouth and broke one tooth in half. One tooth was never recovered. Dr. C. Scott Hlady, an oral and maxillofacial surgeon who attended to Adam's injuries, secured a stainless steel bar in Adam's mouth to stabilize his teeth. He reimplanted the recovered teeth by tying stainless steel wire around the reimplanted teeth and attaching the wire to the bar. Dr.

Hlady testified via videotape evidence deposition that Adam would get a fair amount of swelling around the mouth during the healing process. He further testified that at least two, and possibly three, teeth would require replacement in the future. According to Dr. Hlady, Adam would be restricted from participating in any physical activity for approximately six weeks after the accident. Also, Adam would be placed on a liquid diet during that same time period. On cross-examination, Dr. Hlady testified Adam sustained no permanent loss of function to his teeth as a result of his injuries. Further, there would be no permanent restrictions placed on Adam with regard to his diet and physical activity. Also, according to Dr. Hlady, no complications arose during the healing process.

Dr. Brent Ludens, a dentist specializing in prosthodontics, examined Adam on June 28, 1994. Dr. Ludens, also testifying via videotape evidence deposition, stated Adam would require an implanted supported crown in the site of the lost tooth. Dr. Ludens testified to the complex nature of the attachment and opined as to a minimum six-month healing period. In Dr. Ludens' opinion, the two teeth next to the missing tooth would have to be removed with implants inserted within 5 to 10 years. On cross-examination, Dr. Ludens testified that if the above procedure were performed, Adam would suffer no loss of function to his tooth nor would there be any permanent restrictions placed on Adam's diet or physical activity. Adam eventually received a replacement tooth.

Both Dr. Dale Fehr, an orthodontist, and Dr. Richard Eggar, Adam's pediatric dentist, testified Adam would need braces because of his injuries. Adam, in fact, wore braces from December 1992 through November 1993. Dr. Eggar further believed Adam would eventually experience problems with bacteria and gum disease because of bone loss around his teeth that occurred as a result of the accident.

Adam testified he was not bothered by a resultant scar or his physical appearance. Adam further testified that after he received his new tooth, the mouth injury no longer affected his social life. In fact, Adam testified he sometimes removes his tooth to serve as an "ice breaker" at parties.

Prior to trial, the claims against Geifman Food Stores, Inc., were settled. The jury returned a verdict against the remaining defendants, Lueth and Chuck's Appliances, awarding plaintiffs $70,000 for past and future medical expenses and pain and suffering. However, the jury awarded zero dollars for disfigurement and disability and found Adam 25% comparatively negligent. Plaintiffs' post-trial motion was denied. Plaintiffs now appeal.

On appeal, plaintiffs first argue that a $70,000 award for medical expenses and pain and suffering, without any award for disfigurement and disability, makes the jury's assessment of damages irreconcilably inconsistent. Plaintiffs contend such a discrepancy warrants a new trial on damages. Plaintiffs next argue the finding of contributory negligence is not supported by the record. We disagree with both contentions.

■ Turning to the first issue, plaintiffs direct us to a line of cases that holds that an award for medical expenses without a corresponding award for pain and suffering and/or disability and disfigurement requires reversal *per se*. See *Hinnen v. Burnett*, 144 Ill. App. 3d 1038, 495 N.E.2d 141 (1986); *Urban v. Zeigler*, 261 Ill. App. 3d 1099, 634 N.E.2d 1237 (1994); *Kumorek v. Moyers*, 203 Ill. App. 3d 908, 561 N.E.2d 212 (1990); *Slavin v. Saltzman*, 268 Ill. App. 3d 392, 643 N.E.2d 1383 (1994). However, our supreme court recently examined this line of cases and held that a jury may award pain-related medical expenses and may also determine that the evidence of pain and suffering was insufficient to support a monetary award. *Snover v. McGraw*, 172 Ill. 2d 438, 448, 667 N.E.2d 1310, 1315 (1996). In rejecting the reversal *per se* rule, the court emphasized that such a determination turns solely on the facts of the case and that, under certain circumstances, an award of medical expenses without a corresponding award for pain and suffering may be inappropriate. *Snover*, 172 Ill. 2d at 449, 667 N.E.2d at 1316. The court concluded by reaffirming the traditional rule that a jury's assessment of damages is entitled to substantial deference and that a ruling on a new trial is best made by the trial court in a post-trial motion that will not be reversed unless the trial court abuses its discretion. *Snover v. McGraw*, 172 Ill. 2d at 449, 667 N.E.2d at 1316.

■ In the instant case, the jury awarded damages for past and future medical expenses and pain and suffering, but not for disability and disfigurement. This situation is somewhat different than *Snover*, where the award was for pain-related medical expenses only, and not pain and suffering. However, we find the reasons more compelling in the present case to reject the reversal *per se* rule. *Snover* stands for the proposition that, under the proper circumstances, a jury may award no monetary figure for pain and suffering when awarding damages for corresponding pain-related medical expenses. Despite this apparent inconsistency, our supreme court upheld a jury award as well within its sound discretion. Here, we do not necessarily have a corresponding nexus between disability and disfigurement and the other compensable damage elements. While pain-related medication and treatment are necessary to combat pain and suffering, disability

speaks to a "loss of a normal life" (*Smith v. City of Evanston*, 260 Ill. App. 3d 925, 631 N.E.2d 1269 (1994)) and disfigurement to an impairment to beauty, symmetry or appearance (*Rapp v. Kennedy*, 101 Ill. App. 2d 82, 242 N.E.2d 11 (1968)). We therefore conclude that an award for past and future medical expenses and pain and suffering, without an award for disability and disfigurement, is not reversible *per se*.

Turning to the facts of the present case, both Dr. Hlady and Dr. Ludens testified that Adam would experience no permanent loss of function to his teeth and no permanent restriction in diet or physical activity. Adam testified he was not bothered by a resultant scar or his physical appearance. Adam further testified that after he received his new tooth, the mouth injury no longer affected his social life. Thus, we find the evidence sufficient to support the jury verdict awarding no monetary amount for disability and disfigurement and conclude the trial court did not abuse its discretion by denying plaintiffs' post-trial motion for a new trial on damages.

■ Plaintiffs next argue the jury's finding that Adam was contributorily negligent is contrary to the law and against the manifest weight of the evidence. A plaintiff is guilty of contributory negligence when he fails to exercise that degree of care which a reasonably prudent person would have exercised for his own safety under the same or similar circumstances. *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 576 N.E.2d 1195 (1991); *Reuter v. Kocan*, 113 Ill. App. 3d 903, 446 N.E.2d 882 (1983). In the present case, there was conflicting testimony presented as to where Adam was looking when he approached the open field next to Chuck's Appliances. Faced with this conflict, the jury was free to determine whether Adam was maintaining a proper lookout or not. See *Cates v. Kinnard*, 255 Ill. App. 3d 952, 626 N.E.2d 770 (1994). Thus, we find no error in the jury's finding that Adam was contributorily negligent.

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE, P.J., and McCUSKEY, J., concur.