RICHARD J. ZUDER, Plaintiff-Appellant, v. MARK W. GIBSON *et al.*,
Defendants-Appellees (Palmer S. Lazarus, Defendant).

Second District   No. 2—96—0643

Opinion filed May 22, 1997.

330

John M. Driscoll, of John M. Driscoll & Associates, of Schaumburg, for appellant.

James C. Keane, of James M. Hoffman & Associates, of Schaumburg, for appellee Mark W. Gibson.

Michael Resis and Paul J. Sarauskas, both of Querrey & Harrow, Ltd., of Chicago, for appellee Admiral Heating & Ventilating, Inc.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Richard Zuder, brought this action for injuries sustained when his vehicle was struck from behind by another vehicle being driven by defendant Mark Gibson. The jury returned a verdict awarding the plaintiff damages for medical expenses and pain and suffering, but failed to award any damages for disfigurement and loss of normal life. In the instant appeal, the plaintiff requests a new trial on the issue of damages, arguing that the jury's award of damages was irreconcilably inconsistent and contrary to the manifest weight of the evidence. The plaintiff also argues that he was denied a

fair trial because of certain acts of misconduct committed by defense counsel during the trial. We affirm.

The record indicates that on May 13, 1993, at approximately 1:25 p.m., the plaintiff was operating his vehicle in a northerly direction on Northwest Highway, approaching the intersection of Berry Street in Barrington. The traffic signal at the intersection was red, and the plaintiff brought his vehicle to a complete stop.

Gibson was also operating his vehicle in a northerly direction on Northwest Highway, and he stopped his vehicle directly behind the plaintiff. Gibson was employed as a salesman by defendant Admiral Heating and Ventilating, Inc. (Admiral). At the time in question, Gibson was on his way from Admiral's offices in Hinsdale to meet with a client in Cary.

When the traffic signal at the intersection turned green, a vehicle traveling southbound on Northwest Highway suddenly made a left-hand turn directly in front of the plaintiff. This southbound vehicle was being operated by Palmer Lazarus. In order to avoid contact with Lazarus' vehicle, the plaintiff immediately applied his brakes, and his vehicle was struck in the rear by Gibson's vehicle. The property damage to the plaintiff's and Gibson's vehicles was $1,438 and $1,000, respectively.

Following the accident, the plaintiff moved his vehicle to the side of the road and was transported by ambulance to Good Shepherd Hospital in Barrington. The plaintiff's primary medical complaint was pain in his neck. Following a medical examination and X rays at the hospital, the plaintiff was released with a neck brace and prescriptions for pain medication. The plaintiff was also instructed to follow up with his family physician, Dr. Padmini Thakkar.

Complaining of persistent neck and shoulder pain, the plaintiff followed up with Dr. Thakkar on May 24, 1993. Dr. Thakkar diagnosed the plaintiff's condition as a cervical strain and prescribed several weeks of physical therapy at Good Shepherd Hospital. During June 1993, the plaintiff received four physical therapy treatments from Laurie Kovacs, a licensed physical therapist. The plaintiff reported that his symptoms were progressively improving during these treatments and that he had made a 90% improvement by the time of his discharge from Kovacs' treatment on June 24, 1993.

During the remainder of the summer of 1993, the plaintiff's neck and shoulder pain recurred, and he reported that the pain had begun to radiate down his arm. He remained under Dr. Thakkar's care and underwent an MRI examination on November 1, 1993. The MRI report revealed that he had herniated discs at the C5/C6 and C6/C7 levels and a minimal bulging disc at the C3/C4 level. Dr. Thakkar referred him to Dr. Kanu Panchal for a neurosurgical consultation.

Dr. Panchal testified that the MRI scan revealed that the plaintiff had osteophytes (bone spurs) on his spine, which was indicative of the existence of a condition known as degenerative disc disease. Dr. Panchal opined that, based upon a reasonable degree of medical and surgical certainty, the plaintiff had been suffering from this condition prior to the accident in question. Dr. Panchal testified that this degenerative condition can result in bulging and herniated discs even without a traumatic event. He did acknowledge, however, that it was possible that the trauma from the accident aggravated the degenerative condition of the spine and caused the discs to herniate.

On February 10, 1994, Dr. Panchal performed a surgical cervical diskectomy and fusion on the plaintiff at levels C5/C6 and C6/C7. Following the surgery, Dr. Panchal reported that the plaintiff's pain was reduced and that the tingling and numbness in his arms were gone. At the plaintiff's last office visit on March 7, 1994, Dr. Panchal reported that, despite some recurring pain, the plaintiff had fully recovered and would have no permanent disability.

Dr. Thakkar assisted with the operation performed by Dr. Panchal. Dr. Thakkar testified that the surgery had been a success and confirmed the presence of osteophytes along the plaintiff's spine. She testified that, following the surgery, the plaintiff continued to have pain and a limited range of motion in his neck. These complaints had persisted to the date of the trial. Dr. Thakkar testified that, following the surgery, she could also feel a knot in the plaintiff's right shoulder blade and that the knot caused the plaintiff pain. She opined that the plaintiff's herniated discs, muscle condition, and knot had been caused by the accident and that the plaintiff's pain and motion limitations were permanent. She also testified that the surgical scar on the front of the plaintiff's neck was permanent.

Dr. James Ekeberg testified that he was the plaintiff's family practitioner prior to the date of the accident in question. During October and November 1989, the plaintiff saw Dr. Ekeberg, complaining of neck pain. To alleviate the pain, Dr. Ekeberg prescribed Valium and Naprosyn for the plaintiff. Between 1990 and 1992, the plaintiff made several telephone calls to Dr. Ekeberg's office to get prescription refills of these drugs.

The plaintiff testified that, following the diskectomy surgery, he was in severe pain for four or five weeks and that he was unable to go to work as a salesman. He testified that his gross pay was $2,626.93 every two weeks and that he was not paid for his time off from work. He testified that, as of the date of trial, he had difficulty turning and bending his neck and that he had knotting in his right shoulder. He described the knot as causing a constant pain in his right shoulder,

requiring the use of prescription medications from the time of the accident until the time of trial. He testified that he had difficulty sleeping at night and that he had difficulty performing his work. He testified that his job as a salesman involved air travel two or three days a week and required that he carry samples, catalogues, and a lap-top computer. He testified that, since the surgery, he has needed assistance carrying his materials on business trips and that this has caused him substantial inconvenience.

On April 26, 1994, the plaintiff filed a negligence action against Lazarus, Gibson, and Admiral. Prior to trial, Lazarus settled with the plaintiff in the amount of $98,000. The case therefore proceeded to trial against defendants Gibson and Admiral. At the close of the evidence, the trial court granted the plaintiff's motion for a directed verdict on the issue of agency between Gibson and Admiral. The jury then returned a verdict in the plaintiff's favor, itemized as follows:

| | |
|---|---:|
| Past Medical Expenses | $21,014 |
| Loss of Normal Life | 0 |
| Disfigurement | 0 |
| Past and Future Pain and Suffering | 6,000 |
| Lost Income | 10,400 |
| Property Damage | 1,438 |
| TOTAL | $38,852. |

The jury found the plaintiff 10% at fault, Gibson 40% at fault, and Lazarus 50% at fault. On February 7, 1996, the trial court reduced the plaintiff's judgment to zero after taking into account a $98,000 setoff from the settlement that the plaintiff received from Lazarus. The plaintiff filed a post-trial motion seeking a new trial on the ground that the jury's failure to award anything for loss of normal life and disfigurement was inconsistent with the remainder of the verdict. The trial court denied the post-trial motion, and the plaintiff filed a timely notice of appeal.

The plaintiff's first argument on appeal is that the jury's award, which included damages for medical expenses, lost income, and pain and suffering, was irreconcilably inconsistent because there was not a corresponding award for loss of normal life and disfigurement. The plaintiff argues that, since the jury awarded virtually all of the submitted medical bills and his entire claim for lost wages, it necessarily found that his herniated discs and surgical procedures were proximately caused by the automobile accident. He argues that the jury disregarded proven elements of damages when it denied any recovery for loss of normal life and disfigurement.

■ A jury's award of damages is entitled to substantial deference. *Snover v. McGraw*, 172 Ill. 2d 438, 447 (1996). The determination of damages is a question of fact that is within the discretion of the jury. *Snover*, 172 Ill. 2d at 447. On review, a jury's award of damages will not be disturbed "unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered." *Gill v. Foster*, 157 Ill. 2d 304, 315 (1993).

■ The plaintiff directs us to a line of cases that holds that an award for medical expenses without a corresponding award for pain and suffering and/or disability and disfigurement requires reversal *per se*. See *Slavin v. Saltzman*, 268 Ill. App. 3d 392, 403 (1994); *Sands v. Glass*, 267 Ill. App. 3d 45, 50-51 (1994); *Martin v. Cain*, 219 Ill. App. 3d 110, 115 (1991); *Kumorek v. Moyers*, 203 Ill. App. 3d 908, 913 (1990). However, our supreme court recently examined this line of cases and held that a jury may award pain-related medical expenses and, at the same time, may also determine that the evidence of pain and suffering was insufficient to support a monetary award. *Snover v. McGraw*, 172 Ill. 2d 438, 448 (1996). In rejecting the reversal *per se* rule, the court emphasized that such a determination turns solely on the facts of the case and that, under certain circumstances, an award for pain and suffering may be inappropriate. *Snover*, 172 Ill. 2d at 448. The court concluded by reaffirming the traditional rules that a jury's assessment of damages is entitled to substantial deference and that a ruling on a new trial is best made by the trial court in a post-trial motion. *Snover*, 172 Ill. 2d at 449. A reviewing court should not reverse the trial court's ruling on a post-trial motion absent an abuse of discretion. *Snover*, 172 Ill. 2d at 449.

In the instant case, the jury awarded damages for past and future medical expenses and for pain and suffering, but failed to award any damages for loss of normal life and disfigurement. The Appellate Court, Third District, was presented with this precise circumstance in *White v. Lueth*, 283 Ill. App. 3d 714, 717 (1996). In that case, the plaintiff was struck by a truck, causing him to lose five teeth. *White*, 283 Ill. App. 3d at 715. The jury awarded him $70,000 for past and future medical expenses and for pain and suffering, but awarded him zero dollars for disfigurement and disability. *White*, 283 Ill. App. 3d at 717. The trial court denied his post-trial motion seeking a new trial on damages. *White*, 283 Ill. App. 3d at 716.

On appeal, the *White* court acknowledged that the case was different from *Snover*, but nonetheless held that the facts of the case presented a compelling reason to reject the reversal *per se* rule. 283 Ill. App. 3d at 717. The court commented:

"Here, we do not necessarily have a corresponding nexus between disability and disfigurement and the other compensable damage elements. While pain-related medication and treatment are necessary to combat pain and suffering, disability speaks to a 'loss of a normal life' [citation] and disfigurement to an impairment to beauty, symmetry or appearance [citation]. We therefore conclude that an award for past and future medical expenses and pain and suffering, without an award for disability and disfigurement, is not reversible *per se*." *White*, 283 Ill. App. 3d at 717-18.

As the plaintiff correctly notes, prior to *Snover*, this court repeatedly held that it is inconsistent for a jury to award damages for pain and suffering but fail to make any award for disability and disfigurement. See *Slavin v. Saltzman*, 268 Ill. App. 3d 392, 403 (1994); *Sands v. Glass*, 267 Ill. App. 3d 45, 50-51 (1994). In these cases, this court noted that it was inconsistent for the jury to find that the plaintiff "was injured and that this injury resulted in pain, medical costs, and lost wages, but that the injury did not cause disability and disfigurement." *Slavin*, 268 Ill. App. 3d at 403. We also held that the phrase "disability" encompassed damages for loss of normal life and was not limited solely to compensation for permanent disability. *Slavin*, 268 Ill. App. 3d at 403.

We agree with the defendants that these precedents must be reexamined in light of *Snover*. Under the rule of law articulated in *Snover*, a jury has complete discretion to award damages in the manner it sees fit, provided that the award falls within "the confines of the evidence." *Snover*, 172 Ill. 2d at 449. It is then for the trial court to determine during a post-trial motion whether the jury's award is supported by the evidence. *Snover*, 172 Ill. 2d at 449. The trial court's ruling on a motion for a new trial will not be reversed unless the trial court abused its discretion. *Snover*, 172 Ill. 2d at 449.

An application of these principles to the instant case leads us to conclude that an award for medical expenses and pain and suffering, without a corresponding award for disability and disfigurement, does not warrant automatic reversal. Instead, our review will be limited to a consideration of whether the jury's award falls within "the confines of the evidence" and whether the trial court abused its discretion in ruling on the post-trial motion. See *Snover*, 172 Ill. 2d at 449. Therefore, to the extent that our decisions in *Slavin* and *Sands* adopt the reversible *per se* rule, they are overruled.

In so ruling, however, we note that our ultimate disposition in *Sands* withstands scrutiny under *Snover*. In *Sands*, the trial court granted the plaintiff's motion for a new trial after it had determined that the jury had ignored uncontroverted evidence of the plaintiff's

disability. *Sands*, 267 Ill. App. 3d at 51. We affirmed the trial court's order, holding that the trial court had not abused its discretion in determining that the jury's award was inconsistent with the evidence. *Sands*, 267 Ill. App. 3d at 51. This is the precise inquiry mandated by *Snover*. *Snover*, 172 Ill. 2d at 449.

Turning to the facts of the instant case, the evidence presented by the plaintiff relating to the permanency of his injuries was not uncontroverted. Although Dr. Thakkar testified that the plaintiff still suffered from a painful muscular problem in the right shoulder, Dr. Panchal testified that the plaintiff's injuries were not permanent and that he would be able to resume his normal life without limitation. It was within the sole province of the jury to determine the weight and credibility to be given to this conflicting medical testimony. See *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). The jury was therefore free to give Dr. Panchal's testimony greater weight than Dr. Thakkar's.

As the plaintiff correctly notes, he did present some evidence at trial relating to his loss of normal life. Specifically, he testified that he suffered from ongoing pain, that he had difficulty sleeping at night, and that he had difficulty performing his job as a salesman. However, we also note that, contrary to Dr. Ekeberg's testimony, the plaintiff denied that he ever had problems with his neck prior to the accident. Therefore, not only was there reason for the jury to question the plaintiff's credibility, but there was also evidence from which the jury could infer that the plaintiff's change in lifestyle predated the accident.

The only evidence of disfigurement presented at trial was the surgical incision on the front of the plaintiff's neck. He exhibited his neck to the jury at the end of his case, and his attorney used a flashlight to illuminate the surgical incision. In discussing damages during closing argument, his attorney argued that the scar was especially disfiguring in light of his occupation as a salesman. However, the plaintiff did not give *any* testimony that the surgical incision caused him either embarrassment or grief. Nor was there any testimony from any witness that the scar was noticeable. It was certainly within the jury's province to determine whether the surgical incision resulted in an invisible scar. Where a jury can reasonably determine that damages are minimal, a jury's failure to award damages for disfigurement after surgery should not be set aside. *Simon v. Van Steenlandt*, 278 Ill. App. 3d 1017, 1021 (1996).

In light of this conflicting evidence relating to the nature and extent of the plaintiff's loss of normal life and disfigurement, we conclude that the jury's decision not to award any damages for these categories was within the confines of the evidence. We note that the

jury did award a sum equal to almost all of the plaintiff's medical expenses and lost wages, as well as a $6,000 award for pain and suffering. As discussed by our supreme court in *Snover*, the jury's computations in determining a dollar amount for damage categories such as disfigurement and loss of normal life are especially difficult to quantify and are subject to compromise. *Snover*, 172 Ill. 2d at 448. The record contains no suggestion of mistake, confusion, partiality, or prejudice on the part of the jury. See *Snover*, 172 Ill. 2d at 449. Therefore, we find sufficient evidence to support the jury's verdict awarding no damages for disfigurement and loss of normal life and conclude that the trial court did not abuse its discretion in denying the plaintiff's motion for a new trial. See *White*, 283 Ill. App. 3d at 718.

For his other argument on appeal, the plaintiff complains of certain acts of misconduct committed by James Keane, Gibson's attorney. This misconduct occurred during a brief court recess during Dr. Thakkar's testimony. During this recess, while the courtroom was vacant, Keane paged through and removed a medical record from Dr. Thakkar's files, which had been left on the witness stand. Keane's actions were committed without the knowledge or permission of Dr. Thakkar, the plaintiff, or the plaintiff's attorney. When the trial reconvened, Keane presented the medical record to Dr. Thakkar during his cross-examination, without advising her that he had removed the document from her original file. The medical record contained notes of the plaintiff's physical therapist and referred to improvements in the plaintiff's condition while undergoing therapy. When Dr. Thakkar was presented with this medical record, not realizing that Keane had removed the document from her file, she stated that she had never seen the document before. In the presence of the jury, Keane then told Dr. Thakkar that he had taken the record from her file.

The plaintiff's attorney immediately objected, and the trial court reserved its ruling on the objection until after the jury was dismissed for the day. After hearing argument from both counsel, the trial court admonished Keane for his conduct and ordered him to pay a $100 sanction. Despite the plaintiff's request for additional relief, the trial court found that the plaintiff had not been prejudiced by Keane's conduct and ruled that no further statement regarding the incident needed to be made to the jury.

The plaintiff argues that Keane's conduct was a violation of the physician-patient privilege and was so prejudicial that he is entitled to a new trial. He argues that Keane's conduct was a deliberate attempt to discredit Dr. Thakkar's testimony and to make her appear

confused and argumentative in front of the jury. During his closing argument, Keane repeatedly questioned Dr. Thakkar's competency to testify regarding the plaintiff's diagnosis and treatment.

■ Although improper argument and attorney misconduct can be the basis for granting a new trial, that determination is left to the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. *Bisset v. Village of Lemont*, 119 Ill. App. 3d 863, 865 (1983). The attitude and demeanor of counsel, as well as the atmosphere of the courtroom, cannot be reproduced in the record, and the trial court is in a superior position to assess and determine the effect of improper conduct on the part of counsel. *Bisset*, 119 Ill. App. 3d at 865.

■ In the instant case, we conclude that the trial court did not abuse its discretion in refusing to grant the plaintiff a new trial. Although we certainly agree that Keane's conduct was improper and should be discouraged, we believe that the manner in which the trial court dealt with the misconduct was appropriate. We fail to see how Keane's conduct violated the physician-patient privilege articulated in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 591 (1986), as the plaintiff had already tendered a complete copy of Dr. Thakkar's medical file to the defendants during discovery. Furthermore, we do not find that Dr. Thakkar was subjected to unfair surprise by being presented with a medical record out of her own patient file, which she had presumably reviewed prior to testifying. We therefore conclude that the plaintiff was not unduly prejudiced by Keane's conduct and that the trial court did not abuse its discretion in denying the plaintiff's motion for a new trial.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and RATHJE, JJ., concur.