No. 2--96--0643

                                                      

________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

________________________________________________________________

RICHARD J. ZUDER,                    )  Appeal from the Circuit Court

                                     )  of Lake County.

     Plaintiff-Appellant,            )

                                     )  

v.                                   )  No. 94--L--563

                                     )  

MARK W. GIBSON, and ADMIRAL    )

HEATING AND VENTILATING, INC.,  )  

                               )                  

     Defendants-Appellees      )   Honorable

                               )  Jack Hoogasian,

(Palmer S. Lazarus, Defendant). )  Judge, Presiding.             

________________________________________________________________

     PRESIDING JUSTICE GEIGER delivered the opinion of the court:

     The plaintiff, Richard Zuder, brought this action for injuries

sustained when his vehicle was struck from behind by another

vehicle being driven by defendant Mark Gibson.  The jury returned

a verdict awarding the plaintiff damages for medical expenses and

pain and suffering, but failed to award any damages for

disfigurement and loss of normal life.  In the instant appeal, the

plaintiff requests a new trial on the issue of damages, arguing

that the jury's award of damages was irreconcilably inconsistent

and contrary to the manifest weight of the evidence.  The plaintiff

also argues that he was denied a fair trial because of certain acts

of misconduct committed by defense counsel during the trial.  We

affirm.

     The record indicates that on May 13, 1993, at approximately

1:25 p.m., the plaintiff was operating his vehicle in a northerly

direction on Northwest Highway, approaching the intersection of

Berry Street in Barrington.  The traffic signal at the intersection

was red, and the plaintiff brought his vehicle to a complete stop.

     Gibson was also operating his vehicle in a northerly direction

on Northwest Highway, and he stopped his vehicle directly behind

the plaintiff.  Gibson was employed as a salesman by defendant

Admiral Heating and Ventilation, Inc. (Admiral).  At the time in

question, Gibson was on his way from Admiral's offices in Hinsdale

to meet with a client in Cary.

     When the traffic signal at the intersection turned green, a

vehicle traveling southbound on Northwest Highway suddenly made a

left-hand turn directly in front of the plaintiff.  This southbound

vehicle was being operated by Palmer Lazarus.  In order to avoid

contact with Lazarus' vehicle, the plaintiff immediately applied

his brakes, and his vehicle was struck in the rear by Gibson's

vehicle.  The property damage to the plaintiff's and Gibson's

vehicles was $1,438 and $1,000, respectively.

     Following the accident, the plaintiff moved his vehicle to the

side of the road and was transported by ambulance to Good Shepherd

Hospital in Barrington.  The plaintiff's primary medical complaint

was pain in his neck.  Following a medical examination and X rays

at the hospital, the plaintiff was released with a neck brace and

prescriptions for pain medication.  The plaintiff was also

instructed to follow up with his family physician, Dr. Padmini

Thakkar.

     Complaining of persistent neck and shoulder pain, the

plaintiff followed up with Dr. Thakkar on May 24, 1993.  Dr.

Thakkar diagnosed the plaintiff's condition as a cervical strain

and prescribed several weeks of physical therapy at Good Shepherd

Hospital.  During June 1993, the plaintiff received four physical

therapy treatments from Laurie Kovacs, a licensed physical

therapist.  The plaintiff reported that his symptoms were

progressively improving during these treatments and that he had

made a 90% improvement by the time of his discharge from Kovacs'

treatment on June 24, 1993.

     During the remainder of the summer of 1993, the plaintiff's

neck and shoulder pain recurred, and he reported that the pain had

begun to radiate down his arm.  He remained under Dr. Thakkar's

care and underwent an MRI examination on November 1, 1993.  The MRI

report revealed that he had herniated discs at the C5/6 and C6/7

levels and a minimal bulging disc at the C3/4 level.  Dr. Thakkar

referred him to Dr. Kanu Panchal for a neuro-surgical consultation.

     Dr. Panchal testified that the MRI scan revealed that the

plaintiff had osteophytes (bone spurs) on his spine, which was

indicative of the existence of a condition known as degenerative

disc disease.  Dr. Panchal opined that, based upon a reasonable

degree of medical and surgical certainty, the plaintiff had been

suffering from this condition prior to the accident in question. 

Dr. Panchal testified that this degenerative condition can result

in bulging and herniated discs even without a traumatic event.  He

did acknowledge, however, that it was possible that the trauma from

the accident aggravated the degenerative condition of the spine and

caused the discs to herniate.

     On February 10, 1994, Dr. Panchal performed a surgical

cervical diskectomy and fusion on the plaintiff at levels C5/6 and

C6/7.  Following the surgery, Dr. Panchal reported that the

plaintiff's pain was reduced and that the tingling and numbness in

his arms was gone.  At the plaintiff's last office visit on March

7, 1994, Dr. Panchal reported that, despite some recurring pain,

the plaintiff had fully recovered and would have no permanent

disability.

     Dr. Thakkar assisted with the operation performed by Dr.

Panchal.  Dr. Thakkar testified that the surgery had been a success

and confirmed the presence of osteophytes along the plaintiff's

spine.  She testified that, following the surgery, the plaintiff

continued to have pain and a limited range of motion in his neck. 

These complaints had persisted to the date of the trial.  Dr.

Thakkar testified that, following the surgery, she could also feel

a knot in the plaintiff's right shoulder blade and that the knot

caused the plaintiff pain.  She opined that the plaintiff's

herniated discs, muscle condition, and knot had been caused by the

accident and that the plaintiff's pain and motion limitations were

permanent.  She also testified that the surgical scar on the front

of the plaintiff's neck was permanent.

     Dr. James Ekeberg testified that he was the plaintiff's family

practitioner prior to the date of the accident in question.  During

October and November 1989, the plaintiff saw Dr. Ekeberg,

complaining of neck pain.  To alleviate the pain, Dr. Ekeberg

prescribed Valium and Naprosyn for the plaintiff.  Between 1990 and

1992, the plaintiff made several telephone calls to Dr. Ekeberg's

office to get prescription refills of these drugs.

     The plaintiff testified that, following the diskectomy

surgery, he was in severe pain for four or five weeks and that he

was unable to go to work as a salesman.  He testified that his

gross pay was $2,626.93 every two weeks and that he was not paid

for his time off from work.  He testified that, as of the date of

trial, he had difficulty turning and bending his neck and that he

had knotting in his right shoulder.  He described the knot as

causing a constant pain in his right shoulder, requiring the use of

prescription medications from the time of the accident until the

time of trial.  He testified that he had difficulty sleeping at

night and that he had difficulty performing his work.  He testified

that his job as a salesman involved air travel two or three days a

week and required that he carry samples, catalogues, and a lap-top

computer.  He testified that, since the surgery, he has needed

assistance carrying his materials on business trips and that this

has caused him substantial inconvenience.

     On April 26, 1994, the plaintiff filed a negligence action

against Lazarus, Gibson, and Admiral.  Prior to trial, Lazarus

settled with the plaintiff in the amount of $98,000.  The case

therefore proceeded to trial against defendants Gibson and Admiral. 

At the close of the evidence, the trial court granted the

plaintiff's motion for a directed verdict on the issue of agency

between Gibson and Admiral.  The jury then returned a verdict in

the plaintiff's favor, itemized as follows:

     Past Medical Expenses                             $ 21,014

     Loss of Normal Life                                   0

     Disfigurement                                         0

     Past and Future Pain and Suffering                     6,000

     Lost Income                                           10,400

     Property Damages                                       1,438

                                   TOTAL                  $ 38,852

     The jury found the plaintiff 10% at fault, Gibson 40% at fault, and

Lazarus 50% at fault.  On February 7, 1996, the trial court reduced

the plaintiff's judgment to zero after taking into account a

$98,000 setoff from the settlement that the plaintiff received from

Lazarus.  The plaintiff filed a post-trial motion seeking a new

trial on the ground that the jury's failure to award anything for

loss of normal life and disfigurement was inconsistent with the

remainder of the verdict.  The trial court denied the post-trial

motion, and the plaintiff filed a timely notice of appeal.

     The plaintiff's first argument on appeal is that the jury's

award, which included damages for medical expenses, lost income,

and pain and suffering, was irreconcilably inconsistent because

there was not a corresponding award for loss of normal life and

disfigurement.  The plaintiff argues that, since the jury awarded

virtually all of the submitted medical bills and his entire claim

for lost wages, it necessarily found that his herniated discs and

surgical procedures were proximately caused by the automobile

accident.  He argues that the jury disregarded proven elements of

damages when it denied any recovery for loss of normal life and

disfigurement.

     A jury's award of damages is entitled to substantial

deference.  Snover v. McGraw, 172 Ill. 2d 438, 447 (1996).  The

determination of damages is a question of fact that is within the

discretion of the jury.  Snover, 172 Ill. 2d at 447.  On review, a

jury's award of damages will not be disturbed "unless a proven

element of damages was ignored, the verdict resulted from passion

or prejudice, or the award bears no reasonable relationship to the

loss suffered."  Gill v. Foster, 157 Ill. 2d 304, 315 (1993).

     The plaintiff directs us to a line of cases which hold that an

award for medical expenses without a corresponding award for pain

and suffering and/or disability and disfigurement requires reversal

per se.  See Slavin v. Saltzman, 268 Ill. App. 3d 392, 403 (1994);

Sands v. Glass, 267 Ill. App. 3d 45, 50-51 (1994); Martin v. Cain,

219 Ill. App. 3d 110, 115 (1991); Kumorek v. Moyers, 203 Ill. App.

3d 908, 913 (1990). However, our supreme court recently examined

this line of cases and held that a jury may award pain-related

medical expenses and, at the same time, may also determine that the

evidence of pain and suffering was insufficient to support a

monetary award.  Snover v. McGraw, 172 Ill. 2d 438, 448 (1996).  In

rejecting the reversal per se rule, the court emphasized that such

a determination turns solely on the facts of the case and that,

under certain circumstances, an award for pain and suffering may be

inappropriate.  Snover, 172 Ill. 2d at 448.  The court concluded by

reaffirming the traditional rules that a jury's assessment of

damages is entitled to substantial deference and that a ruling on

a new trial is best made by the trial court in a post-trial motion. 

Snover, 172 Ill. 2d at 449.  A reviewing court should not reverse

the trial court's ruling on a post-trial motion absent an abuse of

discretion.  Snover, 172 Ill. 2d at 449.

     In the instant case, the jury awarded damages for past and

future medical expenses and for pain and suffering, but failed to

award any damages for loss of normal life and disfigurement.  The

Appellate Court, Third District, was presented with this precise

circumstance in White v. Lueth, 283 Ill. App. 3d 714, 717 (1996). 

In that case, the plaintiff was struck by a truck, causing him to

lose five teeth.  White, 283 Ill. App. 3d at 715.  The jury awarded

him $70,000 for past and future medical expenses and for pain and

suffering, but awarded him zero dollars for disfigurement and

disability.  White, 283 Ill. App. 3d at 717.  The trial court

denied his post-trial motion seeking a new trial on damages. 

White, 283 Ill. App. 3d at 716.

     On appeal, the White court acknowledged that the case was

different from Snover, but nonetheless held that the facts of the

case presented a compelling reason to reject the reversal per se

rule.  283 Ill. App. 3d at 717.  The court commented:

     "Here, we do not necessarily have a corresponding nexus

     between disability and disfigurement and the other compensable

     damage elements.  While pain-related medication and treatment

     are necessary to combat pain and suffering, disability speaks

     to a 'loss of a normal life' [citation] and disfigurement to

     an impairment to beauty, symmetry or appearance [citation]. 

     We therefore conclude that an award for past and future

     medical expenses and pain and suffering, without an award for

     disability and disfigurement, is not reversible per se." 

     White, 283 Ill. App. 3d at 717-18. 

          As the plaintiff correctly notes, prior to Snover, this court

repeatedly held that it is inconsistent for a jury to award damages

for pain and suffering but fail to make any award for disability

and disfigurement.  See Slavin v. Saltzman, 268 Ill. App. 3d 392,

403 (1994); Sands v. Glass, 267 Ill. App. 3d 45, 50-51 (1994).  In

these cases, this court noted that it was inconsistent for the jury

to find that the plaintiff "was injured and that this injury

resulted in pain, medical costs, and lost wages, but that the

injury did not cause disability and disfigurement."  Slavin, 268

Ill. App. 3d at 403.  We also held that the phrase "disability"

encompassed damages for loss of normal life and was not limited

solely to compensation for permanent disability.  Slavin, 268 Ill.

App. 3d at 403.

     We agree with the defendants that these precedents must be re-

examined in light of Snover.  Under the rule of law articulated in

Snover, a jury has complete discretion to award damages in the

manner it sees fit, provided that the award falls within "the

confines of the evidence."  Snover, 172 Ill. 2d at 449.  It is then

for the trial court to determine during a post-trial motion whether

the jury's award is supported by the evidence.  Snover, 172 Ill. 2d

at 449.  The trial court's ruling on a motion for a new trial will

not be reversed unless the trial court abused its discretion. 

Snover, 172 Ill. 2d at 449.

     An application of these principles to the instant case leads

us to conclude that an award for medical expenses and pain and

suffering, without a corresponding award for disability and

disfigurement, does not warrant automatic reversal.  Instead, our

review will be limited to a consideration of whether the jury's

award falls within "the confines of the evidence" and whether the

trial court abused its discretion in ruling on the post-trial

motion.  See Snover, 172 Ill. 2d at 449.  Therefore, to the extent

that our decisions in Slavin and Sands adopt the reversible per se

rule, they are overruled.

     In so ruling, however, we note that our ultimate disposition

in Sands withstands scrutiny under Snover.  In Sands, the trial

court granted the plaintiff's motion for a new trial, after it had

determined that the jury had ignored uncontroverted evidence of the

plaintiff's disability.  Sands, 267 Ill. App. 3d at 51.  We

affirmed the trial court's order, holding that the trial court had

not abused its discretion in determining that the jury's award was

inconsistent with the evidence.  Sands, 267 Ill. App. 3d at 51. 

This is the precise inquiry mandated by Snover.  Snover, 172 Ill.

2d at 449.

     Turning to the facts of the instant case, the evidence

presented by the plaintiff relating to the permanency of his

injuries was not uncontroverted.  Although Dr. Thakkar testified

that the plaintiff still suffered from a painful muscular problem

in the right shoulder, Dr. Panchal testified that the plaintiff's

injuries were not permanent and that he would be able to resume his

normal life without limitation.  It was within the sole province of

the jury to determine the weight and credibility to be given to

this conflicting medical testimony.  See Maple v. Gustafson, 151

Ill. 2d 445, 452 (1992).  The jury was therefore free to give Dr.

Panchal's testimony greater weight than Dr. Thakkar's.

     As the plaintiff correctly notes, he did present some evidence

at trial relating to his loss of normal life.  Specifically, he

testified that he suffered from ongoing pain, that he had

difficulty sleeping at night, and that he had difficulty performing

his job as a salesman.  However, we also note that, contrary to Dr.

Ekeberg's testimony, the plaintiff denied that he ever had problems

with his neck prior to the accident.  Therefore, not only was there

reason for the jury to question the plaintiff's credibility, but

there was also evidence from which the jury could infer that the

plaintiff's change in lifestyle predated the accident.

     The only evidence of disfigurement presented at trial was the

surgical incision on the front of the plaintiff's neck.  He

exhibited his neck to the jury at the end of his case, and his

attorney used a flashlight to illuminate the surgical incision.  In

discussing damages during closing argument, his attorney argued

that the scar was especially disfiguring in light of his occupation

as a salesman.  However, the plaintiff did not give any testimony

that the surgical incision caused him either embarrassment or

grief.  Nor was there any testimony from any witness that the scar

was noticeable.  It was certainly within the jury's province to

determine whether the surgical incision resulted in an invisible

scar.  Where a jury can reasonably determine that damages are

minimal, a jury's failure to award damages for disfigurement after

surgery should not be set aside.  Simon v. Van Steenlandt, 278 Ill.

App. 3d 1017, 1021 (1996).

     In light of this conflicting evidence relating to the nature

and extent of the plaintiff's loss of normal life and

disfigurement, we conclude that the jury's decision not to award

any damages for these categories was within the confines of the

evidence.  We note that the jury did award a sum equal to almost

all of the plaintiff's medical expenses and lost wages, as well as

a $6,000 award for pain and suffering.  As discussed by our supreme

court in Snover, the jury's computations in determining a dollar

amount for damage categories such as disfigurement and loss of

normal life are especially difficult to quantify and are subject to

compromise.  Snover, 172 Ill. 2d at 448.  The record contains no

suggestion of mistake, confusion, partiality, or prejudice on the

part of the jury.  See Snover, 172 Ill. 2d at 449.  Therefore, we

find sufficient evidence to support the jury's verdict awarding no

damages for disfigurement and loss of normal life and conclude that

the trial court did not abuse its discretion in denying the

plaintiff's motion for a new trial.  See White, 283 Ill. App. 3d at

718.

     For his other argument on appeal, the plaintiff complains of

certain acts of misconduct committed by James Keane, Gibson's

attorney.  This misconduct occurred during a brief court recess

during Dr. Thakkar's testimony.  During this recess, while the

courtroom was vacant, Keane paged through and removed a medical

record from Dr. Thakkar's files which had been left on the witness

stand.  Keane's actions were committed without the knowledge or

permission of Dr. Thakkar, the plaintiff, or the plaintiff's

attorney.  When the trial reconvened, Keane presented the medical

record to Dr. Thakkar during his cross-examination, without

advising her that he had removed the document from her original

file.  The medical record contained notes of the plaintiff's

physical therapist and referred to improvements in the plaintiff's

condition while undergoing therapy.  When Dr. Thakkar was presented

with this medical record, not realizing that Keane had removed the

document from her file, she stated that she had never seen the

document before.  In the presence of the jury, Keane then told Dr.

Thakkar that he had taken the record from her file.

     The plaintiff's attorney immediately objected, and the trial

court reserved its ruling on the objection until after the jury was

dismissed for the day.  After hearing argument from both counsel,

the trial court admonished Keane for his conduct and ordered him to

pay a $100 sanction.  Despite the plaintiff's request for

additional relief, the trial court found that the plaintiff had not

been prejudiced by Keane's conduct and ruled that no further

statement regarding the incident needed to be made to the jury.

     The plaintiff argues that Keane's conduct was a violation of

the physician-patient privilege and was so prejudicial that he is

entitled to a new trial.  He argues that Keane's conduct was a

deliberate attempt to discredit Dr. Thakkar's testimony and to make

her appear confused and argumentative in front of the jury.  During

his closing argument, Keane repeatedly questioned Dr. Thakkar's

competency to testify regarding the plaintiff's diagnosis and

treatment.

     Although improper argument and attorney misconduct can be the

basis for granting a new trial, that determination is left to the

sound discretion of the trial court and should not be disturbed on

appeal.  Bisset v. Village of Lemont, 119 Ill. App. 3d 863, 865

(1983).  The attitude and demeanor of counsel, as well as the

atmosphere of the courtroom, cannot be reproduced in the record,

and the trial court is in a superior position to assess and

determine the effect of improper conduct on the part of counsel. 

Bisset, 119 Ill. App. 3d at 865.

     In the instant case, we conclude that the trial court did not

abuse its discretion in refusing to grant the plaintiff a new

trial.  Although we certainly agree that Keane's conduct was

improper and should be discouraged, we believe that the manner in

which the trial court dealt with the misconduct was appropriate. 

We fail to see how Keane's conduct violated the physician-patient

privilege articulated in Petrillo v. Syntex Laboratories, Inc., 148

Ill. App. 3d 581, 591 (1986), as the plaintiff had already tendered

a complete copy of Dr. Thakkar's medical file to the defendants

during discovery.  Furthermore, we do not find that Dr. Thakkar was

subjected to unfair surprise by being presented with a medical

record out of her own patient file which she had presumably

reviewed prior to testifying.  We therefore conclude that the

plaintiff was not unduly prejudiced by Keane's conduct and that the

trial court did not abuse its discretion in denying the plaintiff's

motion for a new trial.

     For the foregoing reasons, the judgment of the circuit court

of Lake County is affirmed.

     Affirmed.

     DOYLE and RATHJE, JJ., concur.